## KENNON, RESPONDENT, *v.* GILMER ET AL., APPELLANTS.

DAMAGES — *Excessive verdict — Common carriers.* — In an action for damages for injuries to the person where the evidence showed that the plaintiff was fifty-four years old at the time of the accident; that the large bone of his leg was broken and run through the skin; that the ankle joint was broken and the small bone shattered so that an immediate amputation of the foot was necessary; that it was over a year before the leg healed up, small pieces of bone coming out at different times; that he had been unable to walk without crutches; that an artificial foot caused him pain; that he was under medical treatment for two months, which cost him $800; that his wound was very painful until it healed and at times afterwards; that he was deprived almost entirely of attending to his business, which would be more profitable if he could attend to it; that at times he was obliged to employ other help; that his general health was as good after as before the accident, but he was not as strong and could not take exercise; that his partner considered him of no account since the accident, but before he was able-bodied and did considerable work about their store; that outside of manual labor he was as good a man as before; that they were in the hardware business. *Held*, that in the absence of proof as to the value of plaintiff's business, a verdict of $20,750 was excessive, and a new trial would be granted unless plaintiff would remit all but $10,750 with interest.

*Appeal from Second Judicial District, Deer Lodge County.*

The action was tried before GALBRAITH, J.

*W. W. Dixon*, for Appellants.

*Robinson & Stapleton*, for Respondent.

BLAKE, C. J. — This action was commenced by Kennon to recover damages from Gilmer *et al.* for personal injuries sustained in 1879 through the negligence of the latter. Kennon was then

a passenger upon the stage coach of Gilmer *et al.*, who were common carriers for hire. At the first trial in 1881 the jury returned a verdict for Kennon for the sum of $17,167, and judgment was entered accordingly. Upon an appeal to this court it was adjudged that the cause be remanded for a new trial, but the questions which were discussed in the opinion do not arise upon this hearing. (4 Mont. 433.) At the second trial by a jury a judgment was obtained by Kennon for the sum of $20,750. Another appeal was taken by Gilmer *et al.*, and heard by this court at the January term, 1885, when the following judgment was rendered: "The judgment is hereby reduced to the sum of $10,750, and affirmed as to that amount." (5 Mont. 274.) Both parties sued out writs of error, and the case was remanded to this court by the Supreme Court of the United States "for further proceedings in conformity with this opinion," which is reported in 131 U. S. 22. The scope of our investigation is readily ascertained by observing the concluding paragraph of the opinion by Mr. Justice Gray: "The erroneous judgment of the Supreme Court of the Territory being reversed, the case will stand as if no such judgment had been entered, and that court will be at liberty, in disposing of the motion for a new trial according to its view of the evidence, either to deny or grant a new trial generally, or to order judgment for a less sum than the amount of the verdict, conditional upon a *remittitur* by the plaintiff." The error committed by this court is clearly pointed out in this language: "The judgment of the Supreme Court of the Territory, reducing the amount of the verdict and the judgment of the inferior court thereon, without submitting the case to another jury, or putting the plaintiff to the election of remitting part of the verdict before rendering judgment for the rest, was irregular, and, so far as we are informed, unprecedented; and the grounds assigned for that judgment, in the opinion sent up with the record, as required by the rules of this court, are far from satisfactory." The legal questions relating to the admission of testimony, the assessment of damages, and the instructions to the jury, which were considered and determined by this court, were settled according to the opinion cited by Mr. Justice Gray, and are not before us for review. It is contended by the appellants that the ruling of the court

below in denying their motion for a change of venue must be again considered. It was held by Mr. Justice Gray in this case that "the granting or denial of a change of venue, like the granting or refusal of a new trial, is a matter within the discretion of the court, not ordinarily reviewable by this court on writ of error," and that "the refusal to grant a change of venue on the mere affidavit of the defendants' agent to the state of public opinion in the county clearly involves matter of fact and discretion, and is not a ruling upon a mere question of law." While it seems a needless task to pass upon the matter at this time, we deem it proper to remove all doubt, and state that we adhere to the conclusions which have been expressed in the former opinion of this court.

According to our view of the evidence, the motion for a new trial should be denied generally. Conceding that the testimony is conflicting, we must be governed by the familiar rule that prevents us, under these conditions, from disturbing the verdict. The last question for our decision is whether we should order a judgment for a less sum than the amount of the verdict. The ground of the motion for a new trial is this: "Excessive damages, appearing to have been given under the influence of passion or prejudice." The testimony concerning this point can be embodied in the following statement: Kennon testified that his age was fifty-four years when the accident occurred; that his ankle joint was dislocated; that he remained under medical attendance in Helena over two months; that his foot was amputated on account of this wound; that it was over a year before the leg healed up; that small pieces of bone came out three or four different times; that at all times he had been unable to walk without crutches; that he had an artificial foot, but usually could not wear it more than two or three hours without much pain; that his leg is very weak, although healed up; that his bill for the treatment of the leg in Helena footed up nearly $800; that his wound was very painful until it healed; that his leg continued to pain him sometimes; that he imagined a sharp bone was trying to come out; that, after leaving Helena, he was unable to leave his house for two or three months; that there was very little business that he could attend to, and that he was deprived almost entirely by his wound of attending to any busi-

ness; that his business would be more remunerative and profitable if he could attend to it; that he was sometimes obliged to employ other help; that he was engaged in the hardware business; that his general condition of health before the accident was good, but he had not been a robust man for many years; that his health had been pretty good since the accident, but he had not been a strong man; that his general health was as good after as before the accident; that he had very little strength at the time of the trial; that he was not as strong then as he was before he was hurt; and that he could not, through his injury, take exercise. Dr. Mitchell testified that he was upon the coach at the time of the accident; that the large bone of Kennon's leg was broken, and run through the skin; that it shot out two or three inches; that the ankle joint was broken, and that the small bone was shattered; that a consultation of surgeons was held, and it was decided that immediate amputation was necessary; that he performed the operation; that the wound was slow in healing; that it was one hundred and one days before he could get the ligature away; that small pieces of bone were taken out several months after the amputation; that the leg would heal up, and then become inflamed; that the effect of amputation from inaction upon a man would be that he would not be so strong, and his powers, to that extent, would be lessened; and that a man's muscles would become soft and flexible without exercise, but as to his health, he did not know as it would have any effect. H. H. Zenor testified that he had been associated with Kennon in business for fifteen years; that he was acquainted with the general health and physical ability of Kennon prior to and since the accident; that he considered Kennon of no account since the accident; that Kennon, before this event, was an able-bodied man, and did considerable work about the store; that the business qualifications of Kennon were pretty fair; that they were in the hardware business; that he did not know if Kennon's general health had been injured, but did not think that he was as strong a man as he was before he lost his leg; that outside of the manual labor Kennon was as good a business man as he was before; that Kennon could attend to the correspondence and book-keeping; and that in the work and labor requiring strength Kennon was injured.

Gilmer *et al.* did not introduce any evidence upon this branch of the case, and we may assume that all the facts are presented in the foregoing statement. The authorities support the general proposition that no precise rule can be laid down for the award of compensation to a person who has received a permanent injury, such as the loss of a leg or an arm; that the mere fact that a verdict is returned for a larger sum than the evidence justifies, in the opinion of the court, is not a sufficient ground for judicial interference; and that the amount fixed as damages in actions of this nature will not be set aside or reduced as excessive, unless it appears to have been the result of passion or prejudice on the part of the injury. One ingredient which enters into this computation, in many cases, is the loss of income or business by reason of the injury. In *Nebraska City* v. *Campbell*, 2 Black, 590, the court holds that a physician can introduce evidence to prove "that he was engaged in extensive practice at the time of the injury, and also that it was a period of great sickness in the community." In *Wade* v. *Leroy*, 20 How. 34, the court held that evidence is competent "that before and up to and at the time of the alleged injury the particular business in which he was engaged was that of a distiller and manufacturer of turpentine, and that he was largely and extensively engaged in that business." The most remarkable illustration of this principle is contained in the English case of *Phillips* v. *London R. R. Co.* 42 L. T. N. S. 6, in which the jury assessed the damages in the sum of $80,000, and a new trial was not granted.

No testimony of this character is found in the record, and the extent and value of the business in which Kennon was engaged at the time he was injured were not shown at the trial. This knowledge was necessary to enable the jury to ascertain the damages which had resulted from the injuries to the respondent. In considering cases of like kind there is no uniformity in the verdicts, and extremes can be produced upon both sides. The following number has been selected for the purpose of showing the amounts for which judgments have been sustained by appellate courts: *Illinois R. R. Co.* v. *Parks*, 88 Ill. 373, $8,958; *Deppe* v. *C. R. I. etc. R. R. Co.* 38 Iowa, 592, $9,000; *Ballou* v. *Farnum*, 11 Allen, 73, $9,687.50; *Robinson* v. *Western Pacific R. R. Co.* 48 Cal. 409, $10,000; *Belair* v.

*C. & N. W. R. R. Co.* 43 Iowa, 662, $11,000; *Berg* v. *Chicago etc. R. R. Co.* 50 Wis. 419, $11,000. In the absence of proof relative to the pecuniary affairs of the respondent, at the time referred to in the testimony, and following the principles which are declared in these authorities, we are compelled to say that the damages that were awarded by the jury are disproportionate to the injury complained of. At the January term, 1885, this court ordered that judgment should be entered for the sum of $10,750, but, doubtless through inadvertence, omitted to put the same into legal form. We regard this amount fair compensation for the respondent under the law and evidence. Since that term the Supreme Court of the United States has decided generally against the appellants upon the issues which were submitted. We think that legal interest should be allowed, under the circumstances, upon this sum to the present term. It is therefore ordered and adjudged that the order of the court below, overruling the motion for a new trial herein, be reversed, and that a new trial be granted, unless the said respondent shall, within thirty days after the filing of the *remittitur* from this court in the court below, consent to release all but $14,837.50 of such verdict; that if such consent in writing be filed as above required, then such motion shall be overruled, and said new trial shall be denied; and that the court below shall make such orders as shall become necessary to carry out the directions of this court.

BACH, J., and LIDDELL, J., concur.