BOURKE, RESPONDENT, *v.* BUTTE ELECTRIC AND POWER CO. ET AL., APPELLANTS.

(No. 2,180.)

(Submitted November 9, 1905.   Decided November 27, 1905.)

| 33 | 267 |
| 35 | 412 |
| e36 | 225 |

| 33 | 267 |
| c38 | 247 |

| 33 | 267 |
| 41 | 293 |

*Electricity—Personal Injuries—Inspection of Plant—Instructions—Evidence—Earning Capacity of Plaintiff—Damages—Excessive Verdict—Appeal.*

Electricity—Personal Injuries—Pleadings—Answer—Negative Pregnant.
    1.  The answer to a complaint, in an action for personal injuries against an electric light and power company, charging that de-

fendants on a certain day hung the wire with which plaintiff came in contact over and across a trestle, which denied that any of the defendants, except one, so hung the wire, and that any of the defendants hung such wire only three feet or about three feet above the trestle, but alleged that a certain wire had been strung across it by one of the defendants a distance of about four and a half feet from said trestle, contained a negative pregnant and did not raise any issue as to whether the wire was placed in position before or after the erection of the trestle.

Electricity—Personal Injuries—Trespassers—Instructions.

2.  *Held,* in an action for personal injuries alleged to have been received by plaintiff on coming in contact with one of defendant electric light company's wires strung over a trestle upon which plaintiff was working as an employee of a mining company, that in the absence of anything to justify the conclusion that either the owner of the wire or the owner of the trestle was a trespasser as to the other, an instruction imposing on defendants the duty of inspecting their lines of wire was not objectionable on the ground that plaintiff was a trespasser to whom defendants owed no duty of inspection.

Electricity—Duty of Defendant to Inspect Plant—Instructions.

3.  An instruction given in an action for personal injuries, received by plaintiff through coming in contact with a wire charged with electricity, strung by an electric light and power company over a trestle upon which plaintiff was at work, to the effect that defendant was bound to maintain a system of inspection by which any change in the physical condition of the plant, poles or lines of wire, which might create or increase danger to human life, could be detected, correctly stated the law.

Electricity—Duty of Defendant in Handling—Instructions.

4.  The district court properly charged the jury in an action for personal injuries sustained by plaintiff while rightfully in pursuit of his occupation, by coming in contact with a wire charged with electricity, which wire had been strung by an electric light company over a trestle used by plaintiff in his work—that persons or corporations who handle a force of great inherent danger to the lives and safety of others are held by law to a high degree of care in handling it, and that the care required is measured by and equal to the danger.

Electricity—Personal Injuries—Instructions—Prejudice.

5.  In an action for injuries to plaintiff by coming in contact with defendant's live electric wire, overhanging a trestle on which plaintiff was working, an instruction that there was no evidence that defendants had actual notice of the erection of the trestle, and that their wires were in close proximity thereto, and that the jury should only consider this in the event they believed that the wire was hung before the trestle was erected, otherwise defendants were chargeable with knowledge of the existence of the trestle and the physical conditions surrounding it—was not prejudicial to defendant.

Appeal—Instructions Favorable to Appellant—Effect.

6.  A judgment will not be reversed for errors in instructions which are in favor of appellant.

Personal Injuries—Damages—Earning Capacity—Evidence.

7.  Evidence as to the wages received by plaintiff, in an action for personal injuries, a year prior to the date of the accident was admissible as bearing on his earning capacity.

Personal Injuries—Damages—Earning Capacity—Evidence.

8.   While an instruction should be given in an action for personal injuries in determining the amount of damages to be awarded for impairment of earning capacity in the future, to the effect that the compensation to be allowed should be such as will purchase an annuity equal to the difference between the annual earnings of plaintiff before the injury and the amount he might earn thereafter, if any, yet where such a charge was not given and the one submitted on this question was not complained of or a more specific one asked, defendants may not be heard to contend that the jury was improperly instructed in this regard.

Personal Injuries—Damages—Instructions.

9.   In an action for personal injuries, an instruction that, if the jury found for plaintiff, in fixing his damages, they might consider mental and physical suffering caused by the injury, wages which plaintiff might have earned from the date of the injury to the date of the trial, and, if the injuries were permanent, any loss to him by reason of the impairment of his capacity to earn money in the future, was proper.

Personal Injuries—Excessive Damages—Appeal—Burden of Showing Error.

10.   The burden of showing error on the ground of excessive damages awarded in a personal injury case rests upon appellant, and in the absence of a clear showing the supreme court will not interfere.

Personal Injuries—Excessive Damages—Appeal.

11.   Where, in an action for personal injuries, the evidence was such that the jury might have found that the injuries sustained were permanent, and that plaintiff, who was forty-five years of age and had previous to the accident earned $3.50 per day, would not thereafter be able to earn money, a verdict of $20,000 in his favor will not be set aside on appeal as excessive.

*Appeal from District Court, Lewis and Clark County; Henry C. Smith, Judge.*

ACTION by Martin Bourke against the Butte Electric and Power Co. and George T. Aiken. Judgment was entered in favor of plaintiff. From the judgment and from an order denying them a new trial, defendants appeal. Affirmed.

*Mr. J. L. Wines, Mr. M. J. Cavanaugh,* and *Messrs. Forbis & Mattison,* for Appellants.

In order to maintain an action for negligent injury, it must appear that there was a legal duty due from the person inflicting the injury to the person on whom it was inflicted, and that such duty was violated by a want of ordinary care on the part

of defendant.   (*Kahl* v. *Love*, 37 N. J. L. 5; Lawson on Rights, Remedies and Practice, 1149 et seq.; *Evansville etc. Ry. Co.* v. *Griffin*, 100 Ind. 221, 50 Am. Rep. 783; Bishop on Non-Contract Law, sec. 446 et seq.)   It is not sufficient that there be a general duty to the public which is violated, but in all civil cases the right to enforce such duty must reside in the individual injured, because of a duty due him from the person injuring him, or he cannot recover.   (Cooley on Torts, 660; Bishop on Non-Contract Law, sec. 446; *Kessel* v. *Butler*, 53 N. Y. 612.   See, particularly, *Peck* v. *Batavia*, 32 Barb. (N. Y.) 634.)

Defendants' liability in this case depends upon the question of contemplation of damages.   The rule on this subject is: That the defendant is not liable in negligence where no injurious consequences could reasonably have been contemplated as a result of the act or omission complained of.   (*Blythe* v. *Birmingham Water Works Co.*, 11 Ex. 781; *Benson* v. *Central Pac. Ry. Co.*, 98 Cal. 45, 32 Pac. 809; 21 Am. & Eng. Ency. of Law, 2d ed., p. 486; *Fulton* v. *Grieb Rubber Co.*, 69 N. J. L. 221, 54 Atl. 561; *McCaughna* v. *Owassa & Corruna Elec. Co.*, 129 Mich. 407, 89 N. W. 73; *Snyder* v. *Wheeling Elec. Co.*, 43 W. Va. 661, 64 Am. St. Rep. 922, 28 S. E. 733, 39 L. R. A. 499.)

The court erred in charging the jury to the effect that a legal duty was imposed upon the appellants to inspect their electric wires at such reasonable times, or often enough to enable them to know and ascertain that there had been erected a trestle in such proximity to their electric wires, that one using such trestle was in danger of coming in contact with said wires. Such is not the law when an attempt is made to apply it to the facts of this case.   (*Larmore* v. *Crown Point Iron Co.*, 101 N. Y. 391, 54 Am. Rep. 718, 4 N. E. 752.)   The rule of law is the same in this as in other negligence cases.   "The negligence is not the proximate cause of the injury unless, under all of the circumstances, the accident might have been reason-

ably foreseen by a man of ordinary intelligence and prudence. It is not enough to prove that the accident is the natural consequence of the negligence. It must also have been the probable consequence. (*Block* v. *Milwaukee St. Ry. Co.,* 39 Wis. 378, 46 Am. St. Rep. 849, 61 N. W. 1101, 27 L. R. A. 365.) "Where reasonable care is employed in doing an act not in itself illegal or inherently likely to produce damage to others, there will be no liability, although damage in fact ensues." (21 Am. & Eng. Ency. of Law, 2d ed., pp. 463, 465; *Hall* v. *Murdock,* 119 Mich. 389, 78 N. W. 329; *Fogarty* v. *Finlay,* 10 Cal. 239, 70 Am. Dec. 714; *Bishop* v. *Webber,* 139 Mass. 411, 52 Am. Rep. 715.)

Where a third person has created a dangerous condition on the premises of the defendant, which the defendant neither knew of nor could have known of by the exercise of reasonable care and vigilance, he will not in general be liable to the person injured thereby, though the latter was rightfully on the premises. (*Clap* v. *LaGrill,* 103 Tenn. 164, 52 S. W. 134; 21 Am. & Eng. Ency. of Law, 2d ed., p. 467.) An act or omission from which injurious consequences could not in a sense have been foreseen is not negligence. (21 Am. & Eng. Ency. of Law, 2d ed., p. 471.) This was just the case at bar. The defendant put up poles and strung his wires so high and in such an unfrequented place, that he had no right to expect that they could ever injure any person, except such person either climbed a ladder or a pole up to within reaching distance of the wires. Where the trespass may reasonably be anticipated, it may become a duty to keep the premises in a safe condition (21 Am. & Eng. Ency. of Law, 2d ed., p. 473); or where one is actually aware of the presence of the trespasser. (*Herrick* v. *Wixom,* 121 Mich. 384, 80 N. W. 117, 81 N. W. 333.) And where, under the circumstances, such as existed in the present case, the presence of the trespasser on the premises was not reasonably to have been anticipated, there is, of course, no duty as to such person to have the premises kept in safe condition. (*East St. Louis Con. Works* v. *Jenks,* 54 Ill.

App. 91; *Atchison R. R. Co.* v. *Todd,* 54 Kan. 551, 38 Pac. 804; *Winters* v. *Kansas City Cable Co.,* 99 Mo. 509, 17 Am. St. Rep. 591, 12 N. W. 652, 6 L. R. A. 536; *Witte* v. *Stifel.* 126 Mo. 295, 47 Am. St. Rep. 668, 28 S. W. 891; *Schmidt* v. *Bauer,* 80 Cal. 569, 22 Pac. 256, 5 L. R. A. 580.)   The mere failure to ward against a result which could not have been reasonably anticipated is not actionable negligence. (*Atkinson* v. *Goodrich Transfer Co.,* 60 Wis. 141, 50 Am. Rep. 352, 18 N. W. 764; *Barton* v. *Pepin County Agr. Soc.,* 83 Wis. 19, 52 N. W. 1129; *Huber* v. *LaCrosse City Ry.,* 92 Wis. 636, 53 Am. Rep. 940, 66 N. W. 708, 31 L. R. A. 583.)

The instruction of the court in this case implies that the defendants must have anticipated accident under the circumstances of this case.   This was error.   (56 Cent. L. J. 490.)   But it is the fact that persons may come in contact that imposes the duty of insulation, and hence the duty of inspection.   This duty may or may not exist, according to the circumstances, considering such facts as place, location, frequency of visitors, travelers, etc.   A person may be guilty of contributory negligence where he takes hold of a wire where there is no reason to believe it. should be insulated.   (*Hector* v. *Boston Elec. Light Co.,* 161 Mass. 558, 37 N. E. 773, 25 L. R. A. 559.)   This case holds that an electric light company owes no duty to a trespasser or licensee, nor any duty to insulate where there is no probability of contact.

Where wires are charged with a high tension current the legal duty would require it (defendant) to see that its wires, when strung where persons are liable to come in contact with them were properly insulated.   (*Brown* v. *Edison Elec. Ill. Co.,* 90 Md. 400, 78 Am. St. Rep. 442, 45 Atl. 182, 46 L. R. A. 745.) But against a trespasser the company owes no duty to insulate or inspect.   (*Newark Elec. & Power Co.* v. *Garden,* 78 Fed. 74, 23 C. C. A. 649, 37 L. R. A. 725.)   There must have been a reasonable expectation that a contact with electric wires would happen to impose the duty of taking precautions against it. (See *Sullivan* v. *Boston etc. R. R. Co.,* 156 Mass. 378, 31 N.

E. 128; *Hector* v. *Electric Light Co.*, 161 Mass. 558, 37 N. E. 773, 25 L. R. A. 559, 174 Mass. 212, 75 Am. St. Rep. 300, 54 N. E. 539; *Spiecher* v. *New York etc. Tel. Co.* (N. J.), 39 Atl. 361. See *Martinck* v. *Swift & Co.*, 122 Iowa, 611, 98 N. W. 477; *Wolpers* v. *New York etc. Co.*, 86 N. Y. Supp. 845, 91 App. Div. 424.) Unless the alleged negligence of the defendant was the proximate cause of the injury of which the plaintiff complains, there can be no recovery. (*Clifford* v. *Denver & R. Co.*, 9 Colo. 333, 12 Pac. 219; Wharton on Negligence, sec. 3; Shearman and Redfield on Negligence, sec. 25; Deering on Negligence, sec. 8.)

*Mr. Robert B. Smith,* and *Messrs. Maury & Hogevoll,* for Respondent.

As to the duty of the defendant to inspect its wires, see *Western Union Co.* v. *State*, 82 Md. 293, 51 Am. St. Rep. 464, 33 Atl. 763, 31 L. R. A. 572; *Mitchell* v. *Charleston etc. Co.*, 45 S. C. 146, 22 S. E. 767, 31 L. R. A. 577; *Excelsior Electric Co.* v. *Sweet*, 57 N. J. L. 224, 30 Atl. 553; *Thurton* v. *Powellton Electric Co.*, 185 Pa. St. 406, 39 Atl. 1053; *Dwyer* v. *Buffalo etc. Co.*, 20 App. Div. 124, 49 N. Y. Supp. 1134.

A partial list of the authorities supporting the contentions of respondent is as follows: *Haynes* v. *Raleigh etc. Co.*, 114 N. C. 203, 41 Am. St. Rep. 786, 19 S. E. 344, 26 L. R. A. 810; Shearman and Redfield on Negligence, par. 698; *Excelsior Electric Co.* v. *Sweet*, 57 N. J. L. 224, 30 Atl. 553; *Arkansas Tel. Co.* v. *Rattersee*, 57 Ark. 429, 21 S. W. 1059; *Henning* v. *Western Union Tel. Co.*, 41 Fed. 864; *South Western Co.* v. *Robinson*, 50 Fed. 810, 1 C. C. A. 684; *McCay* v. *Sutherland etc. Co.*, 111 Ala. 337, 56 Am. St. Rep. 59, 19 South. 695, 31 L. R. A. 589; *Ahern* v. *Oregon Co.*, 24 Or. 276, 33 Pac. 403, 35 Pac. 549, 22 L. R. A. 635; *Ennis* v. *Gray*, 87 Hun, 355, 34 N. Y. Supp. 379; *Giraudi* v. *Electric Co.*, 107 Cal. 120, 48 Am. St. Rep. 114, 40 Pac. 108, 28 L. R. A. 596; *Myhan* v. *Louisiana Electric Co.*, 41 La. Ann. 964, 17

Am. St. Rep. 436, 7 L. R. A. 172, 6 South. 799; *Griffin* v. *United etc. Co.*, 164 Mass. 492, 49 Am. St. Rep. 477, 41 N. E. 675, 32 L. R. A. 400; *Western Union Tel. Co.* v. *Thorn,* 64 Fed. 287, 12 C. C. A. 104; *Suburban Electric Co.* v. *Nugent,* 58 N. J. L. 658, 34 Atl. 1069, 32 L. R. A. 700; *Uggla* v. *Westend,* 160 Mass. 357, 39 Am. St. Rep. 481, 35 N. E. 1126; *Western Union Tel. Co.* v. *Eyser,* 91 U. S. 495, 23 L. Ed. 377; *Denver Consolidated El. Co.* v. *Simpson,* 21 Colo. 371, 41 Pac. 499, 31 L. R. A. 566; *Block* v. *Milwaukee,* 89 Wis. 371, 46 Am. St. Rep. 849, 61 N. W. 1101, 27 L. R. A. 365; *Kansas City* v. *Gilbert,* 65 Kan. 469, 70 Pac. 350; *Griffith* v. *New England Co.,* 72 Vt. 441, 48 Atl. 643, 52 L. R. A. 920; *Clements* v. *Louisiana Electric Co.,* 44 La. 692, 32 Am. St. Rep. 348, 11 South. 51, 16 L. R. A. 43 (the first and leading case); *Gulf etc. Co.* v. *Kelly* (Tex. Civ. App.), 34 S. W. 140; *Johnson* v. *Oregon S. L.,* 23 Or. 94, 31 Pac. 283; *Consolidated etc.* v. *Tinchert,* 5 Kan. App. 130, 48 Pac. 889; *Coal and Mining Co.* v. *Britton,* 3 Kan. App. 292, 45 Pac. 100; Croswell on Electricity, par. 266; *Union Pacific Ry. Co.* v. *McDonald,* 152 U. S. 262, 14 Sup. Ct. 619, 38 L. Ed. 436; *Kraatz* v. *Brush Electric Co.,* 82 Mich. 457, 46 N. W. 787; *Thomas* v. *Western Union Tel. Co.,* 100 Mass. 156; Keasby's Electric Wires, par. 166; *United States Illuminating Co.* v. *Grant,* 55 Hun, 222, 7 N. Y. Supp. 788; *Perham* v. *Portland etc. Co.,* 33 Or. 451, 53 Pac. 14; Black's Law Accident Cases, p. 38; 1 Thompson on Negligence. 2d ed., par. 797; Black on Law and Practice Accident Cases, par. 181; Exodus xxi: 28-31; *Texarkana Gas etc. Co.* v. *Orr,* 59 Ark. 215, 43 Am. St. Rep. 30, 27 S. W. 66; *Cooke* v. *Wilmington,* 9 Houst. (Del.) 306, 32 Atl. 643; *Graham* v. *Boston,* 156 Mass. 75, 30 N. E. 170.

The verdict was not excessive   (*Harrold* v. *New York P. R. Co.,* 24 Hun, 184; *Hall* v. *Chicago etc. Co.,* 46 Minn. 439, 49 N. W. 239; *Chicago etc.* v. *Holland,* 18 Ill. App. 418; *Alberti* v. *New York etc. Co.,* 43 Hun, 421; *Ehrman* v. *Brooklyn City,* 38 N. Y. St. Rep. 990, 14 N. Y. Supp. 336; *Shaw* v. *Boston etc. Co.,* 8 Gray, 45; *Walker* v. *Erie R. Co.,* 63 Barb. 260; *International Co.* v. *Brazil,* 78 Tex. 314, 14 S. W. 609.)

Statement of the Case, by the Justice Delivering the Opinion.

This action was commenced in Silver Bow county by the plaintiff, Bourke, to recover damages for personal injuries received by him by coming in contact with an electric light wire charged with electricity. The defendants originally were the Butte Electric and Power Company, the Butte Lighting and Power Company, the Butte General Electric Company, and George T. Aiken. Afterward, on plaintiff's motion, the action was dismissed as to the Butte Lighting and Power Company and the Butte General Electric Company, and proceeded thereafter against the Butte Electric and Power Company and George. T. Aiken.

The complaint alleges that the defendants were engaged in the business of furnishing light by electricity to the citizens of Butte and Meaderville in Silver Bow county. Paragraph V of the complaint is as follows: "That on or about the first day of May, 1902, near Meaderville, in the said county of Silver Bow, Montana, the said defendants did cause to be hanged, about three feet above and across a trestle at the East Colusa mine, a certain copper wire, and charged the same with, and continued at all times thereafter to keep the same charged with, a current of electricity of a voltage of about two thousand five hundred volts, that being sufficient in power to kill men of ordinary vitality, and to do great bodily harm to all men, whenever they might touch the same; that the said wire, on the 10th day of May, 1902, and long prior thereto, was insufficiently, carelessly and negligently insulated, and that the defendants were well aware of the said want of insulation, or could with reasonable diligence or care have been aware of such want of insulation."

It is further alleged that the wire mentioned in paragraph V was hung by the defendants, or by them permitted to hang, over and across said trestle so low that persons working over the trestle were in imminent danger of coming in contact with

the wire; and that the wire was so low that it had to be moved and lifted up by persons working on the trestle. It is further alleged that this trestle belonged to the Boston and Montana Company, and that on the 10th day of May, 1902, this plaintiff, while in the employ of that company, was there lawfully hauling waste in tram cars along and over this trestle.

Paragraph VII of the complaint is as follows: "That the defendants, when they hung the said wire over the said trestle, and only about three feet above the said trestle, and without insulation as aforesaid, well knew that this plaintiff and many other men employed by the said mining company, were daily employed in walking over the said trestle and must in the course of such employment touch the said wire."

It is further alleged that in order for plaintiff to get his cars back and forth along the track on this trestle, it was necessary for him to lift up said wire every time he passed, and that the defendants knew that it was necessary for him to do so, and that plaintiff did not know that this wire was in any manner charged with an electric current. It is alleged that the placing of this wire over the trestle so low, and the placing of it there without proper insulation, constituted acts of gross negligence and malicious recklessness on the part of the defendant company.

It is further alleged that on the 10th day of May, 1902, it was raining; that the trestle was wet, and that, as plaintiff was pursuing his business and passing back and forth with his car, in attempting to lift the wire to let his car go by he touched the wire with his left hand; that the wire was then charged with electricity; that a current of electricity passed through him, caused him to hold on to the wire, burned all the flesh from the fingers and thumb of his hand, and otherwise caused him great pain and terrible anguish; that by reason of this injury he was confined to a hospital for eighteen weeks under the care of a physician; that he suffered daily great bodily pain; and that the injuries inflicted upon him are permanent; that before the accident he was a strong and healthy man, capable

of earning, and did earn, $3.50 a day; that by reason of this accident he will never be a strong man again; that he cannot open his left hand, because of the fact that the muscles on the inside thereof were burned off; that the muscles of his legs and arms have become shrunken; that he continues to suffer pains throughout his body; that he is informed and believes that he will never be relieved of these; that by reason of the burning he has been rendered so weak that he cannot eat anything but soft food; that at the time of the burning he was about forty-five years of age; that since that time he has not been able to do any work or earn any money, and that he will never again be able to do any work, by reason of such injury.

It is further alleged that the acts of the defendants as set forth were done maliciously and wantonly, and in criminal disregard of the rights and safety of all persons, and particularly of this plaintiff. Actual damages in the sum of $30,000 are asked, and punitive damages in the sum of $20,000 in addition thereto.

The answer denies that either or any of the defendants, except the Butte Electric and Power Company, was engaged in the business of furnishing light by electricity to the citizens of Butte and Meaderville, as charged in the complaint. There are specific denials that the wire mentioned in the complaint, strung over the trestle, was insufficiently or carelessly insulated, or that it was ever necessary for the plaintiff to lift the wire in hauling his car over the trestle, or that the plaintiff did not know that the wire was charged with an electric current. There is a denial of any knowledge or information sufficient to form a belief as to whether or not the plaintiff was injured, or the extent or character of his injuries. There is a further denial that because of any act or thing done by the defendants, or either of them, the plaintiff was injured in any manner or at all. There is also a denial that any of the acts alleged in the complaint as having been performed by the defendants, or either of them, were done or performed maliciously or wantonly, or in criminal disregard, or any disregard, of the right of plaintiff or any person.

The answer also contains allegations to the effect that over the trestle were strung two wires, one a primary wire, six and five-sixths feet above the trestle, and a secondary wire, four and one-half feet above the trestle; and it is alleged that the accident to the plaintiff was occasioned by the plaintiff taking hold of said primary wire and said secondary wire at one and the same time. It is alleged that it was not necessary for the plaintiff to take hold of either of these wires, and that his taking hold of either of them, or both at the same time, were acts of negligence on his part, which contributed to the injury which he received.

With relation to the principal allegations of the complaint in paragraph V, set forth in full above, the denials in the answer are so pregnant with admissions, that they are set forth at length, as follows: "Deny that on or about the first day of May, 1902, or at any other time, near Meaderville, in said county of Silver Bow, or elsewhere, any of said defendants above named, save and except the Butte Electric and Power Company, did cause to be hanged three feet, or any number of feet above or across a certain trestle at the East Colusa mine, or elsewhere, a certain copper wire, or charged the same with, or continued at any time thereafter to keep the same charged with, a current of electricity of a voltage of about two thousand five hundred volts, or any number of volts, or at all, or that any wire hanged by said defendants, or by either of them, save and except the Butte Electric and Power Company, was sufficient in power to kill men of ordinary vitality, or to do gross or any bodily harm to all men, or any men whenever they might touch the same, or otherwise, or at all.

"Deny that said defendants or either of them, ever at any time strung or hanged said wire mentioned in said complaint, or any wire, or at all, over said or any trestle, only three feet, or about three feet, above said trestle; but in this connection and as a part of this denial defendants allege that a certain wire strung by the Butte Electric and Power Company, was so strung over and above said trestle a distance of four and one-half feet from said trestle, and called a secondary wire."

There is not any denial whatever of the allegations of paragraph VII set forth above.

The cause was transferred to Lewis and Clark county, where it was tried to the court sitting with a jury. The jury returned a verdict in favor of the plaintiff and judgment was entered thereon. The appeals are from the judgment and from an order denying defendants' motion for a new trial.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

1. The cause was apparently tried upon the theory that there was an issue raised by the pleadings as to whether the wire which caused the injury to plaintiff was placed in a position before the trestle upon which plaintiff was at work was erected. The most casual reading of the pleadings will show at once that there was not any issue upon this question at all. The complaint in paragraph V above, in plain and unmistakable language, charges that the defendants on or about the 1st day of May, 1902, hung this wire, charged with an electric current of two thousand five hundred volts, over and above and across a trestle at the East Colusa mine. The denial of those allegations is, that any of the defendants, except the Butte Electric and Power Company, hung the wire mentioned in the complaint over and above or across the trestle at the East Colusa mine; and that any of the defendants hung the wire mentioned in the complaint only three feet or about three feet above said trestle. The answer alleges that *a certain wire* hung by the Butte Electric and Power Company was so hung over and above said trestle, a distance of about four and one-half feet from said trestle, and was called a secondary wire. These pregnant denials admit that the Butte Electric and Power Company strung the wire mentioned in the complaint, charged with an electric current of two thousand five hundred volts, over the trestle at the East Colusa mine. The only denial is that such wire was only three feet or about three feet above the trestle.

If the trestle was not there before the wire was placed in position, it is hardly necessary to say that the wire could not have been strung over and across the trestle, and therefore the answer unmistakably admits the existence of the trestle before the wire which caused plaintiff's injury was placed in position.

The particular wire which caused the injury is definitely identified in the proof as a primary wire; so that the trial court would have been justified in stating to the jury that there was not any issue upon the question, but that the answer admits that this wire with which plaintiff came in contact was placed in position after the trestle upon which he was working was erected. But the defendants offered proof tending to show that there were four wires stretched over this trestle; that two of them were primary and two secondary wires; that the primary wires were charged with an electric current of from two thousand to two thousand five hundred volts, while the secondary wires were charged with only about one hundred and four volts, which was not sufficient to have caused the injury complained of.

Acting upon the assumption that there was an issue as to whether the wire or the trestle was first put in place, the court submitted to the jury certain instructions of which complaint is made. One of these instructions (No. 9) was asked by the defendants and given by the court with a material modification. By this instruction the jury were told that if they found from the evidence that the wire which caused the injury to plaintiff was strung by the defendants before the trestle was erected; that the trestle was erected by a third person without the knowledge or consent of the defendants, and was not used by the defendants, and that plaintiff was at work on the trestle for some person other than the defendants; and that the defendants did not know that the trestle was being used; and if they further found that the wire which caused the injury was strung a sufficient height above the surface of the ground to render it impossible for persons at work or traveling in that vicinity to come in contact with it by ordinary means, then

the act of plaintiff in coming in contact with the wire was contributory negligence on his part which would preclude his recovery. To this extent the instruction was asked by the defendants, but the court attached to it this modification: "Unless you find that the said defendants were guilty of negligence in not inspecting their property at such reasonable periods of time as would enable them to know and discover that said trestle had been erected under their said wires and was being used as a passageway by human beings, and that the erection of said trestle had brought the said wires so close to persons passing across said trestle as to be dangerous to the lives and safety of human beings."

The court, by instruction No. 12, told the jury that if they should find from the evidence that the wire which caused the injury was strung before the trestle was erected, then they were instructed that it is the duty of persons or corporations transmitting electric currents that are dangerous to human safety or life, to inspect their properties at reasonable intervals with a view of ascertaining what, if any, physical changes have taken place which might create or increase danger to human life; and in this case, if the jury should find that the property was not inspected at reasonable intervals, and that a reasonable inspection would have disclosed the existence of the trestle and the physical conditions surrounding it at the time the plaintiff was injured, then, in that event, the defendants were charged with knowledge of the existence of the trestle.

Objection is made to instruction No. 9 as modified, and to No. 12, in that they impose upon the defendants the duty of inspecting their lines of wire, even if the trestle was erected after the wire which caused the injury was strung. Appellants contend that if it was found that the trestle was erected after the wire was put in place, then, as to the defendants, the plaintiff was a naked trespasser, and, as to him, the defendants did not owe the duty of inspection, and in support of this cite *Egan* v. *Montana Central Ry. Co. et al.,* 24 Mont. 569, 63 Pac. 832, *Beinhorn* v. *Griswold,* 27 Mont. 79, 94 Am. St. Rep. 818, 69

Pac. 557, 59 L. R. A. 771, and *Driscoll* v. *Clark*, 32 Mont. 172, 80 Pac. 373. But the complaint alleges that the plaintiff was rightfully and lawfully in pursuit of his business at the time when, and place where, he was injured, and this is not denied. Neither is there anything in the pleadings or proof which would even tend to show that the owner of the trestle was, as to the owner of the wire, a trespasser.

The wire was strung on and along a public street, and the trestle was built across the street at right angles with the course of the line of wire. As said before, the answer specifically admits that the wire was strung after the trestle was erected; but if it be said that all parties proceeded in the trial court upon the theory that there was an issue raised as to this fact, still there is not anything which would justify the conclusion that either the owner of the wire, or the owner of the trestle was, as to the other, a trespasser. The law will not presume it, but, in the absence of any showing to the contrary, the presumption is that each alike was there lawfully. So that we may at once dismiss from our consideration any contention that the owner of the trestle was a trespasser; and this being so, the cases cited above from this state are not in point here. Defendants' liability to the plaintiff must, therefore, be determined by rules applicable to one injured by the alleged negligence of another, where the injured party was rightfully pursuing his business or pleasure at the time of his injury.

In 3 Current Law, 1182, the rule as to this liability is announced as follows: "While one furnishing electricity is not an insurer, yet as to the public he is obliged to use the utmost human care, vigilance, and foresight, reasonably consistent with the practical operation of his plant, to provide against all reasonably probable contingencies, the care required in any particular case being proportional to the danger. This includes the use of the best mechanical contrivances and inventions in practical use, perfect insulation at all places near which people have a right to go, and it has been held, perfect insulation of all overhead wires strung through streets, the consideration of climatic

conditions, and the maintenance of such a system of inspection as will insure reasonable promptness in the detection of defects.''

While this rule goes farther than it is necessary for us to go in this instance, we do adopt and approve it to the extent that it holds the owner or operator of an electric plant to a reasonable degree of care in erecting pole lines, selecting appliances, insulating the wires wherever people have a right to go and are liable to come in contact with them, and in maintaining a system of inspection by which any change which has occurred in the physical conditions surrounding the plant, poles or lines of wire, which would tend to create or increase the danger to persons lawfully in pursuit of their business or pleasure, may be reasonably discovered.   (*Mitchell* v. *Charleston L. & P. Co.,* 45 S. C. 146, 22 S. E. 767, 31 L. R. A. 577.)

Other courts announce the rule in even stronger terms.   For instance, in Colorado, it is said: ''Moreover the court in other instructions correctly declared that the defendant was bound to exercise the highest skill, most consummate care and caution, and utmost diligence and foresight in the construction, maintenance, and timely inspection of its entire plant which was attainable, consistent with the practical conduct of its business according to the best known methods of the state of its art at and prior to the time of the disaster.''   (*Denver Con. Electric Co.* v. *Lawrence,* 31 Colo. 301, 73 Pac. 39.)

And in Pennsylvania the rule respecting the duty of a gas company is stated as follows: ''While no absolute standard of duty in dealing with such agencies can be prescribed, it is safe to say in general terms that every reasonable precaution suggested by experience and the known dangers of the subject ought to be taken.   This would require in the case of a gas company, not only that its pipes and fittings should be of such material and workmanship, and laid in the ground with such skill and care, as to provide against the escape of gas therefrom when new, but that such system of inspection should be maintained as would insure reasonable promptness in the detection of all leaks that might occur from the deterioration of the material

of the pipes, or from any other cause within the circumspection of men of ordinary skill in the business.'' (*Koelsch* v. *Philadelphia Co.*, 152 Pa. St. 355, 34 Am. St. Rep. 653, 25 Atl. 522, 18 L. R. A. 759.)

It would hardly do to say that the defendant can only be required to exercise due diligence after it receives notice of any defect in its appliances or of any change in the physical conditions surrounding them, for this would be placing a premium upon negligent ignorance, as was said, in substance, by the supreme court of South Carolina in *Mitchell* v. *Charleston L. & P. Co.* above. (*District of Columbia* v. *Woodbury,* 136 U. S. 463, 10 Sup. Ct. 990, 34 L. Ed. 472.)

Under the rule which we have announced above, we think the court's instructions No. 9 as modified, and No. 12 as given, correctly state the law.

2. The court also gave an instruction, numbered 5, of which complaint is made. That instruction is as follows: ''The court instructs the jury, that all persons or corporations who handle a force of great inherent danger to the lives and safety of others, are held by law to a high degree of care in handling the same, to the end that other persons shall not be hurt by the same, while such other persons are not trespassing and are rightfully minding their own business; in other words, the care required is measured by and equal to the danger; when anyone handles a force of utmost danger, a very great care is required; what would be care in handling a force of little danger might not be care in handling a force of great danger and might be negligence in handling such a force; as the danger increases, so the degree of care increases which is required of persons who are handling the force; the degree of care required is proportionate to the danger of the force, and where a force of highest danger is handled, a very high degree of care is required in handling the said force to the end that no other person lawfully minding his own business and not trespassing may be hurt by the force.'' We think this instruction correctly states the law.

In *Commonwealth Electric Co.* v. *Melville*, 210 Ill. 70, 70 N. E. 1052, it is said: "Electricity is a subtle and powerful agent. Ordinary care exercised by those who make a business of using it for profit to prevent injury to others therefrom, requires much greater precaution in its use than where the element used is of less dangerous character. As there is greater danger and hazard in the use of electricity, there must be a corresponding exercise of skill and attention for the purpose of avoiding injury to another, to constitute what the law terms 'ordinary care.' The care must be commensurate with the danger."

In *Hoye* v. *Chicago M. & St. P. Ry. Co.*, 46 Minn. 269, 48 N. W. 1117, the Minnesota court states the rule as follows: "Reasonable care is all that is required. But this must be proportionate to the risks to be apprehended and guarded against." This language is quoted with approval by the same court in the later case of *Gilbert* v. *Duluth Gen. E. Co.*, 93 Minn. 99, 106 Am. St. Rep. 430, 100 N. W. 653.

The same rule in practically the same terms is announced by other courts and text-writers as follows: "It would have been safer and the better practice to instruct the jury—which ought hereafter to be observed—even in cases like the one before us, that the defendant was bound to exercise that reasonable care and caution which would be exercised by a reasonably prudent and cautious person under the same or similar circumstances. In addition to this, the jury should have been instructed that the care increases as the danger does, and that, where the business in question is attended with great peril to the public, the care to be exercised by the person conducting the business is commensurate with the increased danger." (*Denver Con. Electric Co.* v. *Simpson*, 21 Colo. 371, 41 Pac. 499, 31 L. R. A. 566.)

"An electric light company is bound as to the public exercise the utmost degree of care in the construction, inspection, repair and operation of its apparatus and appliances; or, disregarding distinctions as to degrees of care, the rule may be thus stated: To prevent an injury to the public, the law requires that usual

and ordinary care should be used, which, in such a business as an electric light company operates, requires and demands a degree of care and diligence proportionate to the danger or mischief that is liable to ensue. The words 'usual and ordinary care' mean in such cases nothing more or less than that if there be great danger and hazard in the business, there should be a corresponding degree of skill and attention required by the law." (10 Am. & Eng. Ency. of Law, 872.)

"Electric companies are bound to use 'reasonable care in the construction and maintenance of their lines and apparatus— that is, such care as a reasonable man would use under the circumstances—and will be responsible for any conduct falling short of this standard.' This care varies with the danger which will be incurred by negligence. In cases where the wires carry a strong and dangerous current of electricity, and the result of negligence might be exposure to death or most serious accidents, the highest degree of care is required." (*City Electric St. Ry. Co.* v. *Conery,* 61 Ark. 381, 54 Am. St. Rep. 262, 33 S. W. 426, 31 L. R. A. 570.)

"The measure or degree of care required of electrical companies is variously defined, but it is conceived that the consensus of opinion is that they must exercise that reasonable care consistent with the practical operation of their business which would be observed by reasonably prudent persons under like circumstances, increasing the care with any change in conditions likely to increase the danger, and having due regard to the existing state of science and of the art in question." (15 Cyc. 472.)

Many of the cases growing out of alleged negligence by companies handling electricity are reviewed in Keasbey on Electric Wires, sections 242-255, and the doctrine announced is that embodied in instruction No. 5. After all is said, the instruction only announces the familiar rule in negligence cases, that the defendant is required to exercise reasonable care. But what is reasonable care in handling brick and mortar may amount to criminal negligence in handling nitroglycerin; so that the only

rational rule is that announced by the trial court: that the care required is measured by and equal to the danger.

3. By instruction No. 10 the court told the jury that there was not any evidence which would warrant the jury in finding that the defendants had actual notice of the erection of the trestle, and that their wires had been brought in close proximity to it; but that the jury should only consider this in the event that they believed from the evidence that the wire which caused the injury was hung before the trestle was erected; and in the event they believed from the evidence that the wire was strung after the trestle was erected, then the defendants were chargeable with knowledge of the existence of the trestle and the physical conditions surrounding it. If there was any error in this instruction, it was error in the defendant's favor.

4. Upon the trial the plaintiff offered testimony which tended to show that he had lived in Butte about seventeen or eighteen years; that he had worked in and about the mines and reduction works in Silver Bow, Deer Lodge and Granite counties; that he had received from three to four dollars per day, according to the character of work he did; that among others he had worked for one D. H. Dunshee for six or seven years; that in 1901 he was at work in the Pennsylvania mine and worked there for about a year. He was then asked what wages he received there. This question was objected to on the ground that the investigation should be limited to an inquiry as to the wages he was receiving at the time the accident occurred, and that the testimony was irrelevant, incompetent and immaterial. The objection was overruled and error is assigned to this ruling of the court.

We think the objection was properly overruled. It might have occurred that at the time of the injury the plaintiff was not receiving any wages at all, and had not been for some time prior thereto, and, while it would have been competent for this fact to have been made to appear to the jury, it can hardly be said that an injured party under such circumstances would not be entitled to recover anything. Section 4330 of the Civil

Code establishes the measure of damages in cases of this kind, as follows: "For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate for all detriment proximately caused thereby, whether it could have been anticipated or not."

In a leading English case upon this subject it is held, that where recovery was sought by a physician for injuries which occasioned loss of time and which impaired his capacity to earn money in the future, the jury might consider proof of the average aggregate of yearly fees received by the physician before his injury. (*Phillips* v. *London etc. R. R. Co.*, L. R. 5 Q. B. 78, 42 L. T., N. S., 6; Patterson's Railway Accident Law, secs. 393-396.) We do not think that the period of time covered by the inquiry in this instance was unreasonable.

5. In the specifications of errors in appellants' brief, under the head "Insufficiency of Evidence to Justify the Verdict," it is stated that the evidence is insufficient to justify a verdict for $20,000, the amount returned by the jury; but counsel apparently attached little importance to this contention, as their brief does not contain any argument whatever upon the subject. *Kennon* v. *Gilmer et al.*, 9 Mont. 108, 22 Pac. 448, and *Hamilton* v. *Great Falls St. Ry. Co.*, 17 Mont. 334, 42 Pac. 860, 43 Pac. 713, are cited, but to what purpose is not just apparent. In each of these cases the verdict was apparently arbitrarily scaled. *Fulsome* v. *Concord*, 46 Vt. 135, and *Houston H. & T. C. R. Co.* v. *Willie*, 53 Tex. 318, 37 Am. Rep. 756, are the only other cases cited, and these likewise without any argument or comment whatever.

In *Fulsome* v. *Concord* the trial court reminded the jury that an allowance for prospective damages is making payment in advance, and in fixing upon a sum for such damages this fact might be taken into consideration and the amount reduced to its present worth. On appeal the supreme court said of this: "As the effect of this suggestion would be to lessen the damages, if it had any effect, the defendant cannot complain of it, and we

find no legal error in it. In respect to the amount of pros-
pective damages to be awarded, the jury are the exclusive
judges.''

In *Houston etc. Co.* v. *Willie*, the supreme court of Texas said
that compensation for lessened ability to earn money should be
made upon the principle that the amount allowed is such as will
purchase an annuity equal to the difference between the injured
party's annual earnings before his injury, and the amount, if
any, he might earn thereafter.

But if these cases are cited in support of some contention
which appellants may make, that the jury was improperly in-
structed upon the method to be employed in determining the
amount of damages for impairment of earning capacity in the
future, it is sufficient to say that a more definite instruction
than that given by the court, was not asked by them. The
court instructed the jury that if they found for the plaintiff,
then in fixing the amount of damages they might take into con-
sideration mental and physical pain and suffering caused by
the injury; wages which plaintiff might have earned from the
date of the injury to the date of the trial; and, finally, if they
found that the injuries are permanent, they might take into
consideration any loss to him by reason of the impairment of his
capacity to earn money in the future. No complaint is made
of this instruction and none could well be made. We are, how-
ever, of the opinion that an instruction particularly informing
the jury of the plan or standard to be adopted in estimating
damages for impairment of capacity to earn money in the future
should be given in all such cases; but, if defendants desired
a more specific instruction than that given, they should have
asked for it.

We think the rule announced by the Texas court, above, is
the correct one, and in fact the only safe guide in fixing such
damages. The question in a case of that kind is: What amount
will purchase an annuity equal to the difference between the
annual wages or salary received by the plaintiff before and after
the injury, where the injury is the proximate cause of the im-

pairment of earning capacity? This rule is approved in *Baltimore & Ohio R. Co.* v. *Henthorne,* 73 Fed. 634, 19 C. C. A. 623; 4 Sutherland on Damages, 3d ed., sec. 1249.

The law does not contemplate that the injured party shall be paid in advance a sum, the interest from which will equal such amount and at his death leave the principal to his estate, but only that he shall not be made to lose because of his injury. From standard mortuary tables and tables made use of by actuaries to determine the cost of a particular annuity, such damages may be ascertained and fixed with some degree of certainty.

However, the elements of physical and mental pain and suffering are entirely uncertain and no fixed standard can be established for ascertaining the damages occasioned by them. The amount must, of necessity, rest in the sound discretion of the jury, and courts are ever reluctant to interfere with the verdict upon the ground that it is excessive or insufficient. The parties are entitled to a verdict from the jury, and courts ought not to substitute their judgments for those of juries, except in those exceptional cases where it manifestly appears that the jurors made a mistake in calculation, considered an item or items of damages which should not have been considered, or abused that sound discretion which by the law is vested in them.

From the testimony given in this case the jury might properly have drawn the conclusion that the plaintiff's earning capacity was totally destroyed by this accident, and that his mental faculties as well were greatly impaired by reason of it.

Had the jury been instructed as to the proper standard for estimating damages for impairment of capacity to earn money in the future, they might, by a reasonable, but not excessive, allowance for mental and physical pain and suffering, have arrived at the amount fixed by their verdict. In any event, the burden of showing error rests upon the appellants, and in the absence of a clear showing, this court would not be justified in interfering upon the ground of excessive damages alone, particularly where, as in this instance, the evidence is such that the jury might well have drawn the conclusion that plaintiff's

injuries are permanent.   (13 Cyc. 130, and numerous cases cited.)

We have considered the other assignments, but find no error. The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE MILBURN concur.

Rehearing denied December 19, 1905.