CHARLES K. SMITH, Appellant, *v.* THE BROOKLYN HEIGHTS RAILROAD COMPANY, Respondent.

*Negligence — death of a horse — when the question whether it was occasioned by electric current from a trolley wire is one for the jury —* res ipsa loquitur *— electric street railroad — care required with respect to appliances not constructed or owned by it.*

In an action brought against an electric street railroad company, to recover damages for the killing of a horse owned by the plaintiff, the plaintiff testified that, as he was driving along a street on which the defendant operated an electric street railroad, he pulled out for a passing car and that, as he did so, his horse fell; that he waited a little while and that, as the horse did not move, he alighted from his wagon and went to the horse's head; that adjacent to the horse there was a broken wire hanging from the trolley wire to the trolley pole and that each time it touched the pole, fire would fly from it; that the pole was white with electric light from top to bottom.

There was also evidence that the plaintiff was affected in a manner similar to the horse, viz., that he fell down and was unable to rise.    The plaintiff ultimately got the horse home and it died immediately after arriving there.

*Held,* that the question whether the death of the horse was due to the electric current or to some other cause was for the jury to determine;

That the doctrine of *res ipsa loquitur* was applicable to the occurrence;

That, as the defendant had admitted an allegation of the complaint that it was operating an electric street railroad through the street in question, it thereby admitted that it was using the appliances and mechanical devices necessary for the operation of its street railroad;

That it was chargeable with the same degree of care in respect to such appliances as if they had been constructed and owned by it, and that consequently the absence of proof, that the defendant had actually erected or owned the wires in question and the poles to which they were attached, was not fatal to the plaintiff's right to recover.

APPEAL by the plaintiff, Charles K. Smith, from a judgment of the County Court of Queens County in favor of the defendant, entered in the office of the clerk of the county of Queens on the 4th day of April, 1902, upon the dismissal of the complaint by direction of the court after a trial at the Queens County Trial Term.

*J. Bohmbach,* for the appellant.

*I. R. Oeland* and *George D. Yeomans,* for the respondent.

HOOKER, J.:

This is an action to recover for the loss of a horse and for injuries to the person of the plaintiff. Plaintiff has died since the trial and the action has been continued as to the cause of action which survived him. The complaint was dismissed at the close of the plaintiff's case, and he appealed.

That portion of the plaintiff's evidence which is material is as follows : " As I was driving along there on Myrtle Avenue a car came down and I pulled out for it on the right side, and as I pulled out the horse went away from me quite lively; I waited a second or two and of course the horse dropped right in a pond of water. * * * I waited a little while and the horse didn't make any move whatever and I had to get down there to get him up. I got down to the horse's head, went along to the horse, when there was an explosion which made the fire fly from the wire which crosses from the trolley pole to the center wire, and the pole was white from top to bottom with one electric light. As the wire was across the fire flew right down at each explosion afterwards. I was not able to get up. * * * Q. Tell the jury what you saw in regard

to any wires that were there? A. Yes, there were, just one; one kind of spit fire at every explosion. Q. What about its being broken? A. There was only one that I seen. This wire was hanging down from the center wire over to the pole that holds the center wire up. It was hanging down far enough to catch the pole and the horse. * * * It was a dark, stormy night, heavy, stormy. Yes, there was wind. Yes, quite a heavy wind. * * * Nothing struck me that I know of. * * * Every time that wire that was broke and was hanging down touched the pole the explosion went off and the fire went down from the cross wire and the pole was lit from top to bottom. There was an explosion every time the wire touched the pole."

The defendant was operating a street railway in the thoroughfare in which this accident took place. The plaintiff got his horse home and it died immediately after arriving there.

The respondent contends that there is not sufficient evidence to make out a cause of action against the defendant for the negligent killing of the horse, in the absence of evidence that horse or man was in contact with the wire. *Hart* v. *Hudson River Bridge Co.* (80 N. Y. 622) is authority for the proposition that juries are the triers of fact and that they are to draw the facts and inferences to be had from the evidence, provided there is a reasonable doubt; that the court is not to resolve the doubt against the plaintiff, and this language was used: "When from the circumstances shown, inferences are to be drawn which are not certain and incontrovertible, and may be differently made by different minds, it is for the jury to make them; that is to say, when the process is to be had at a trial of ascertaining whether one fact had being, from the existence of another fact, it is for the jury to go through with that process." It is true that there is no positive evidence in the case that the horse was struck by the wire or ran into it, but the wire was there adjacent to the horse when the plaintiff came down out of his wagon, and he became affected in a manner much similar to that which apparently affected the horse. It is true that the horse might have slipped down and injured himself in that way, and not have come in contact with the wire or received the electric current at all, or the horse may have been stricken with some physical infirmity which resulted in his death later, independent of the electric cur-

rent.   These are possibilities, however, and they comprise the element of doubt.   It is a matter of common knowledge that electricity received through the body is dangerous and sometimes fatal, and that when wires highly charged with it become grounded, circuits of the deadly current are sometimes numerous in the immediate vicinity.   Nor is it without doubt from the state of the evidence that the plaintiff may have fallen to the ground and been unable to rise by reason of some physical cause or through fright at the display of electrical phenomena and the raging of the storm.   It is not required of the plaintiff to exclude all presumptions against his theory; it is sufficient if he show facts and circumstances tending toward a greater probability.   The doubt is for the jury's consideration, and it will give it such force as it deserves in drawing the inferences.

No proof was introduced to show that the defendant had built or actually owned the wires in question and the poles to which they were attached, and defendant claims that without such proof the plaintiff is not entitled to recover.   The 2d paragraph of the complaint, however, admitted by the answer, reads as follows : " That heretofore, on or about the 15th day of September, 1900, the defendant   *   *   *   was operating a surface or street railroad propelled and worked by electric power   *   *   *   through and upon Myrtle avenue, a public street and highway,   *   *   *   and the said railroad was then and there laid, run and operated on, upon and along said street or highway."   This is an admission by the defendant that it was using the appliances and mechanical devices necessary for the operation of its electric railway, and it was required to use such appliances with the same degree of care as if they had been constructed by the defendant itself.   The defendant is liable for any negligence in this respect so far as the facts presented by the record here are concerned, to the same extent as if the ownership had been its own.

This brings us to a consideration of the only other point urged by the respondent, namely, that the plaintiff has failed to show any negligence on the part of the defendant.   We think that the doctrine of *res ipsa loquitur* is applicable to the facts proved by the plaintiff upon the trial; an extended discussion of the applicability of this rule is now unnecessary, for the reason that in

numerous cases in both the first and second departments it has been held that the falling of a trolley wire into the street, or the presence therein of broken trolley wires, raises a presumption of negligence. " The falling of the trolley wire into the street raised a presumption of negligence on the part of the defendant, and in the absence of contributory negligence, as to which no claim was made that it existed, created a liability for the injuries thus sustained, unless the defendant satisfactorily explained the conditions so as to overcome the presumption of negligence which thus arose." (*O'Flaherty* v. *Nassau Electric R. R. Co.*, 34 App. Div. 74, 76. See, also, *Jones* v. *Union Railway Co.*, 18 id. 267; *Caglione* v. *Mount Morris E. L. Co.*, 56 id. 191; *Griffen* v. *Manice*, 166 N. Y. 188; *Mullen* v. *St. John*, 57 id. 567.)

We think that it was error for the trial court to nonsuit the plaintiff, and the judgment should, therefore, be reversed and a new trial granted, costs to abide the event.

GOODRICH, P. J., BARTLETT, WOODWARD and HIRSCHBERG, JJ., concurred.

Judgment of the County Court of Queens county reversed and new trial ordered, costs to abide the event.