(107 App. Div. 505.)

O'LEARY v. GLENS FALLS GAS & ELECTRIC LIGHT CO.

(Supreme Court, Appellate Division, Third Department. September 13, 1905.)

1. ELECTRICITY—INJURY FROM LIVE WIRE—NEGLIGENCE.

In an action against an electric light company for the death of decedent, caused by his coming in contact with a live wire in a street, it was shown that the wire had been broken for two or four days before the accident, and that five days before the accident the light company had inspected the wire and found it in repair. During the intervening period no tests were made by a magnetic pole by which it could have discovered that the wire was broken. There was no explanation why tests were not made. Held, that the jury was not justified in finding that the company was not negligent.

[Ed. Note.—For cases in point, see vol. 18, Cent. Dig. Electricity, §§ 7, 9.]

2. SAME—INSTRUCTIONS.

Where, in an action against an electric light company for the death of decedent, caused by his coming in contact with a broken live wire, the evidence showed that it had not been in use for some time, but the company failed to prove that it had cut the wire, and failed to explain the accident, it was reversible error to refuse to charge that the facts that the wire fell and that decedent was injured by coming in contact with it afforded prima facie evidence of want of due care on the company's part.

Appeal from Trial Term, Warren County.

Action by James O'Leary, administrator of Daniel O'Leary, deceased, against the Glens Falls Gas & Electric Light Company. From a judgment for defendant, and from an order denying a motion on the minutes to set aside the verdict and for a new trial, plaintiff appeals. Reversed.

The defendant is a corporation engaged in the business of generating and supplying gas and electricity for light and power purposes in the village of Glens Falls, and for that purpose has erected and maintains poles and wires on many of the public streets in said village. One of its pole lines extends up Walnut street, crossing Lawrence street at right angles. At the time of the accident to plaintiff's intestate a loop from the Walnut street line ran for some distance up Lawrence street. On the night of May 13, 1904, at about 7 o'clock in the evening, the plaintiff's intestate, a boy of 15 years of age, was playing with other boys, in the vicinity of the intersection of Walnut and Lawrence streets, a game called "Steps Taken." During the course of the game the plaintiff's intestate was being pursued by one of his playmates, and, running across the street, put out his hand to dodge around a tree which stood between the curb and the sidewalk. As he put out his hand it came in contact with the end of an electric light wire, which caused a flash of light and threw him upon the street and caused his death. It seems that this branch of the defendant's wire, which extended for some distance down Lawrence street, had prior to this time become separated, either cut or broken. The electric current in the wire came from the east. The part of the wire which was from the west was therefore a dead wire. That coming from

the east carried a voltage of about 2,200 volts, and it was this current that caused the death of plaintiff's intestate. This action was brought for damage for negligence causing the death. A trial was had before the court and jury, with a verdict of no cause of action. After the denial of the motion for a new trial, the plaintiff has here appealed from the judgment dismissing the complaint and from the order denying his motion for a new trial.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Timothy I. Dillon, for appellant.
J. A. Kellogg, for respondent.

SMITH, J.   The complaint in this action charges the defendant with negligence in permitting and allowing one of its wires, used for the purpose of conducting electricity, to become broken, and in allowing and permitting said wire to remain broken and out of repair, and to hang suspended downward toward the ground, so that said wire might come in contact with persons in or upon or·using said street while the said wire was charged with electricity.  The evidence of two witnesses for the plaintiff was to the effect that the wire had been down at least two days prior to the accident.  Another witness swore that it was down four days, while still another witness swore that she saw the wire hanging upon the tree nine days before the accident.  As against this the defendant offered proof that the wire was newly put up a year before.  The superintendent of the defendant inspected it the Sunday preceding the Friday of the accident, and other witnesses, who were in the vicinity within a few days of the accident, failed to discover that the wire was down.  From the evidence it appears that the defendant had at its station a ground detector, from which it could be determined whether the wire had at any time broken down and become grounded.  It appears that where the end of a broken wire hangs loosely over a tree, for instance, and does not come in contact in any way with the ground and thus make a ground circuit, this broken wire would not be shown by the test made by this ground detector.  This superintendent swears, however, that there was another test—the "magneto pole;" "that is, in our company.  That is a little appliance, with a couple of wires attached to it, to put in the circuit and ring it up.  If it don't ring it is open.  These are the devices used by electric light companies for the purpose of detecting wires that are broken; and, when we detect a wire that is broken, we look it up right away."  If the end of this broken wire, then, touched a tree, so as to form a ground connection, the fact would be ascertained by the ground detector.  An open wire, however, in which no ground connection was made, could only be ascertained by the use of this magneto pole.  With this magneto pole at hand, the use of which would have discovered this break, there is not one word of evidence that that instrument was used at any time for such purpose.  Assuming, for the argument, that the inspection made upon the Sunday previous to the accident was a thorough one,

we are not satisfied with the verdict of a jury which holds the defendant to have been without fault in failing for five days to make tests by an instrument in their possession which would have discovered the break and the danger.   With all safeguards an electric current of 2,200 volts along the streets of a city presents great danger.   Care proportioned to that danger the law demands of defendant as reasonable and requisite.   No reason is disclosed in the record for failing to ascertain by the magneto pole that the wire was broken. Without such explanation we are of opinion that the jury were not justified in finding that the defendant had used all precautions which the law requires to protect the public from harm.

The other branch of the case, however, to wit, the charge of negligence in suffering the wire to fall and present this dangerous situation, seems to have been overlooked by the learned trial judge. This wire extended along the public highway.   It was charged with a dangerous and deadly current of electricity.   That the breaking of a wire under such circumstances would constitute a prima facie case of negligence, so as to call upon the defendant to give full explanation, would seem to me undoubted.   In fact, the learned counsel for the defendant in his brief admits this general doctrine as applicable to this case, but insists that the doctrine itself goes to the extent only of declaring that from the accident the jury may infer negligence, but are not bound so to do.   Plaintiff's counsel, granting the right of the jury to disregard the prima facie case thus made, contends that he has not been given the benefit of the rule by the learned trial judge in his charge.

Examining the charge of the court, it was first charged that to establish his case the plaintiff must produce evidence which satisfied the jury that the defendant has done something, or omitted something which he ought otherwise to have done.   The charge then proceeds:

"It won't do for you to guess, to say that the boy is killed and somebody ought to pay; but the plaintiff must produce evidence to you as sensible, practical men, which lodges in your mind and brings to it a reasonable satisfaction that he is right in the controversy.   If the evidence is evenly balanced, or if you cannot find that the necessary fact exists, then the plaintiff cannot recover. * * *   It don't rest upon the defendant to account for the accident, and it will not do to say that, because the boy was killed by the defendant's wire, that makes the defendant liable.   This defendant had a perfect right to run through the streets of Glens Falls its wires, and to carry through them the current of electricity which it maintained through them; and if, after doing that as it did, it wouldn't be fair, if this line should break that day, perhaps a few hours before the accident, and then the boy was killed, to say that the defendant had been negligent.   That wouldn't do, because it might be, and would be in such a case, one of these accidents which we all must stand when they come to us."

At the close of the charge the plaintiff excepted to that part of the charge in which it was said that it did not rest with the defendant to account for the accident, and also, if the wire should break from any cause, it would not do to say that the defendant was negligent, and asked the court to charge:

"That the fact that the electric wire fell, and that plaintiff was injured by coming in contact therewith, affords sufficient prima facie evidence that the accident arose from want of care on the part of the electric light company."

To this the court responded:

"That is so under ordinary circumstances. It appears here that the wire was hanging down before this accident; and both sides have attempted to explain the situation by evidence. Upon the whole evidence, as it now stands, it is a bare question of fact for the jury whether this was down on account of the negligence of the defendant, or whether it was down for such a length of time that it would have known or ought to have discovered it with a reasonably proper inspection."

To the refusal to charge the plaintiff excepted.

The exceptions noted are, we think, well taken. If the doctrine of "res ipsa loquitur" be here applicable, upon proof of the happening of the accident the negligence of the defendant was prima facie established, and it was for the defendant to account for the accident, or at least to give such explanation as was in its power of how the wire happened to be down. The qualification made by the court, to the effect that this was so "under ordinary circumstances," would seem to imply that the rule was not applicable to the case at bar. We think the request to charge was properly made and should have been granted without qualification.

The force of this exception, too, would seem to be emphasized by what seems to us an utter failure on the part of the defendant to explain this accident. It was stated upon the argument that this wire down Lawrence street was no longer in use. This does not directly appear in the record. It appears inferentially, however. The testimony of one of plaintiff's witnesses was that the wire had been severed for nine days. If the wire were in constant use, some proof could probably have been secured that the light which it fed had been burning during some of those nine days. Moreover, within three or four days after the happening of the accident a wire was put up there by the superintendent himself for the purpose of simply testing to see how near to the tree the wire came. If the wire had been in constant use, it would naturally have been replaced forthwith, and there would have been no need for this experiment. If the wire were not in use, it is not clear that the defendant was not guilty of negligence as matter of law in leaving a wire in a public street, charged with 2,200 volts of electricity, for which there was no use whatever, and which wire might by some accident fall to the injury of passers-by. If the wire were not in use, it was not impossible that some lineman of the defendant may himself have cut it for some purpose. It is much more probable that, if this wire were cut, it was cut by some servant of the defendant than by some wrongdoer, who would have to climb 25 feet in the air to reach it. There is not one word of evidence, however, from the defendant, that the line was not cut by its servants. Without proof, then, that this line was not cut by some of the servants of the defendant, we think the defendant has failed to account for the accident, and failed to rebut the prima facie proof furnished by the happening of the accident itself.

It follows, therefore, that this judgment must be reversed, and a new trial ordered. All concur; CHESTER and HOUGHTON, JJ., in result, on the ground that the verdict is against the weight of the evidence.