### COLUSA PARROT MINING & SMELTING CO. v. MONAHAN.

(Circuit Court of Appeals, Ninth Circuit. May 25, 1908.)

No. 1,521.

1. MASTER AND SERVANT—INJURIES TO SERVANT—LIVE WIRE—CONTRIBUTORY NEGLIGENCE.

Where plaintiff, a common laborer, knowing nothing of electric work and unfamiliar with its perils, was directed to do certain work on an iron roof which was wet and slippery, and, on slipping on the roof, seized a live electric wire negligently maintained by defendant over the roof and improperly insulated from which plaintiff was severely injured, plaintiff was not negligent as a matter of law.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 1089–1132.]

2. JUDGMENT—DISMISSAL WITHOUT PREJUDICE—EFFECT.

In general, an order or judgment dismissing an action without prejudice leaves the party as if no such action had been instituted.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 30, Judgment, § 1018.]

3. SAME—BAR.

Under Mont. Code Civ. Proc. 1895, § 1007, providing that a final judgment dismissing the complaint either before or after trial does not prevent a new action for the same cause of action unless it expressly declares, or it appears by the judgment roll that it is rendered on the merits, an order entered on motion of plaintiff's counsel, dismissing the action without prejudice as to defendant mining company, etc., was no bar to a subsequent action by plaintiff against such company for the same cause of action.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 30, Judgment, § 1018.]

4. EVIDENCE—ADMISSIONS—PLEADINGS—COMPLAINT.

In an action for injuries to a servant by an electric shock communicated from the live wire negligently insulated extending over the roof of defendant's building, an allegation that plaintiff without any negligence on his part, and in the exercise of due care, and being ignorant of the danger of touching the wire, "inadvertently" took hold of the wire so insufficiently and negligently insulated by defendant and was thereby injured, did not by the use of the word "inadvertently" admit that plaintiff was negligent.

5. MASTER AND SERVANT—INJURIES TO SERVANT—DUTY OF MASTER.

Where defendant maintained a heavily charged electric wire insufficiently insulated about four feet above the corrugated iron roof of its ore-

house, defendant in sending plaintiff, a common laborer, to make certain repairs on the roof, was bound to know that he might come in contact with the wire, and was therefore required to properly insulate the same so that those likely to come in contact therewith would not be injured.

**6. SAME—PROXIMATE CAUSE.**

Where defendant maintained an insufficiently insulated electric wire, four feet above the corrugated iron roof of its orehouse, and plaintiff, while working on the roof according to defendant's directions, slipped and, in seizing the wire to save himself was badly burned, defendant's negligence in maintaining the wire in an improper condition was the proximate cause of the accident.

**7. EVIDENCE—EXPERTS—ELECTRIC WIRES.**

Where a servant was injured by seizing an insufficiently insulated electric wire strung over defendant's orehouse, the court properly permitted expert electricians to testify as to the condition of the wire and premises at the time of and shortly after the accident, and as to the method adopted by defendant for insulating.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, § 2328.]

**8. ELECTRICITY—WIRES—INSULATION—CARE REQUIRED—NEGLIGENCE.**

At places where people have a right to go for work, business, or pleasure, the insulation of electric wires should be made as nearly perfect as possible and the utmost care used to keep them so; the fact that a person received a shock from touching the wire under such circumstances being evidence of improper insulation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Electricity, § 7.]

**9. DAMAGES—PERSONAL INJURIES—EXPECTANCY OF LIFE.**

In an action for personal injuries, evidence as to plaintiff's expectancy of life according to life tables, and in respect to the amount required to produce him an annuity equal to the difference between the amount which he would have earned each year and what he could have earned in his injured condition, was admissible.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Damages, §§ 487–489.]

In Error to the Circuit Court of the United States for the District of Montana.

W. M. Bickford and George F. Shelton, for plaintiff in error.

H. Lowndes Maury, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. The defendant in error was an employé of the plaintiff in error, and as such was sent by the company to the roof of its orehouse to do some work, where he slipped, and, in falling, caught hold of a live wire, which inflicted the injuries for which he sued and recovered a verdict and judgment for damages in the court below. The case is brought here by the defendant below.

The plaintiff alleged in his complaint that the defendant negligently and intentionally permitted the roof of its orehouse to be unsafe and dangerous to all persons going thereon, in that it negligently and wantonly permitted a certain copper wire, insufficiently and carelessly insulated, carrying and charged by the defendant with a dangerous current of electricity, to wit, 2,500 volts, to hang and remain at a distance of only four feet above the roof where the plaintiff was sent and put to work by the defendant; that at the time the defendant strung the wire so insufficiently insulated defendant knew that the plaintiff and other of

its employés would in the course of their employment likely go upon the roof and would be likely to come in contact with the wire, and be thereby killed or receive great bodily injury; that the pretended insulation of the wire was weatherproof only, and was not designed to protect human beings, and was insufficient for the latter purpose; that for a long time prior to the plaintiff's injury the defendant well knew that at the place where the plaintiff touched the wire it was not insulated, and yet permitted the same to hang about four feet above the roof; that on or about the 12th day of July, 1904, the plaintiff was sent by the defendant upon the said roof, "and without any negligence on his part and in the exercise of all care on his part, and being ignorant of the danger of touching the said wire, inadvertently, with his left hand, and while engaged in the business of his master, took hold of the said wire so insufficiently and negligently insulated by the defendant as aforesaid, and charged by the said defendant with electricity as aforesaid; that immediately the said current of electricity passed through the body of this plaintiff into the said roof, the same being of iron as aforesaid, and which said roof was a good conductor of electricity, and the plaintiff was thereby grievously burned and injured" in particulars specifically stated. The answer of the defendant put in issue the alleged negligence on its part, and set up contributory negligence on the part of the plaintiff, in that while upon the roof, which was in a wet and slippery condition and difficult to stand upon, the plaintiff failed to exercise due and proper precautions to avoid slipping, and did slip, and, to save himself from falling, took hold of the wire in question, and thereby received the shock of electricity which caused his injury. Such being the answer of the defendant on that point, we may here dispose of the defense of contributory negligence by saying that the plaintiff could not have taken hold of the wire if the defendant had not permitted it to hang within his reach, and that having sent the plaintiff, who, it appears, was a common laborer, knowing nothing of electrical work and unfamiliar with the perils attending it, on a wet and slippery roof to work, the jury might well have considered that it was, in view of the plaintiff's testimony to the effect that he did not know the wire was dangerous, perfectly natural that he should catch hold of it when he slipped, in the effort to save himself from falling. The answer further set up in defense that the plaintiff assumed the risks incident to his employment, and that among those risks was the presence of the electric wire on the roof of which he complains. The defendant further plead in bar of the action the fact that on the 26th of November, 1904, the plaintiff filed in the court below a complaint against the defendant and others, alleging the same cause of action; that, a demurrer of the defendant to that complaint being sustained, the plaintiff filed therein an amended complaint, which amended complaint the defendant moved the court to strike from the files, the result of which motion is shown by this order entered in the minutes of the court, as appears from the record:

"This cause came on regularly for hearing at this time upon motion of defendant, Colusa Parrot Mining & Smelting Company, to strike from the files the amended complaint; W. M. Bickford and Geo. F. Shelton, Esq., appearing as counsel for said defendant, and H. L. Maury, Esq., as counsel for plaintiff,

and thereupon upon motion of counsel for plaintiff, it is ordered that this action be dismissed without prejudice as to said defendant Colusa Parrot Mining & Smelting Company, and without costs to either party.  In open court Feb. 14th, 1905."

The general rule is that an order or judgment dismissing an action without prejudice leaves the party as if no such action had been instituted.  Creighton v. Kerr, 87 U. S. 8, 22 L. Ed. 309; Taylor v. Slater. 21 R. I. 104, 41 Atl. 1001; Seamster v. Blackstock, 83 Va. 232, 2 S. E. 38, 5 Am. St. Rep. 262; Ray v. Adden, 50 N. H. 84, 9 Am. Rep. 175; O'Keefe v. Irvington Real Estate Co., 87 Md. 196, 39 Atl. 428; Storey's Eq. Pl. § 793; Beech, Eq. Prac. §§ 643–644; Daniell, Chancery Prac. 659.  By statute in Montana, where this case arose, it is declared:

"A final judgment dismissing the complaint either before or after a trial does not prevent a new action for the same cause of action unless it expressly declares, or it appears by the judgment roll, that it is rendered upon its merits."

Section 1007 of the Statutes of Montana (Code Civ. Proc. 1895), which statute has been construed by the Supreme Court of Montana in accordance with the general rule upon the subject.  Glass v. Basin & Bay State Mining Co., 34 Mont. 88, 85 Pac. 746.

There remains to consider the points made by the plaintiff in error in respect to the sufficiency of the complaint, the question of the defendant's negligence, the alleged assumption of risk by the plaintiff, and the alleged errors of the trial court in respect to the admission of testimony.  No point is made in respect to instructions, nor is the charge of the court brought up.  It must, therefore, be presumed that the jury was properly instructed.  The objection to the sufficiency of the complaint grows out of the use of the word "inadvertently" in the quotation therefrom which we have heretofore given; the contention of the counsel for the plaintiff in error being that the plaintiff in the case thereby admitted his own negligence.  The case cited from the Court of Appeals of Kentucky—Lexington Ry. Co. v. Fain's Administrator (Ky.) 71 S. W. 629—in support of the point is, we think, not only against the plaintiff in error on that point, but also against it as respects the defendant's alleged negligence.  In that case a boy 14 years of age was killed in the city of Lexington by an electric shock received from one of the wires of the company.  The pole to which the pulley wire was attached which the boy took hold of as he passed along the street was in the sidewalk; the wire being about four and a half feet from the ground.  The court said, among other things:

"It is not unusual for persons of mature age and judgment, when standing near a tree or post, to lean against it; nor is it unnatural for a boy to touch any object that he may pass in walking along a street or sidewalk.  The pulley wire, when it was attached to the reel, was within 4½ feet of the ground, and therefore convenient to the touch of man or boy; and, there being nothing in its appearance to excite alarm or suspicion, it is hardly probable that a boy would know its dangerous character or appreciate the necessity of avoiding contact with it in passing.  We think it a self-evident proposition that it was the duty of appellant, in using the streets of the city of Lexington, by permission of the municipal authorities, for purposes of private gain, to so conduct its business as not to injure persons passing along such streets, and to keep the highways occupied by their apparatus in substantially the same condition as to convenience and safety as they were in before such occupancy.  The law applicable to this

case has been well settled in Kentucky in the several cases that have been brought to this court for final adjudication. It is that those who manufacture or use electricity for private advantage must do so at their peril, and the only way to prevent accidents where a deadly current is used is to have perfect protection at those points where people are likely to come in contact with it"— citing McLaughlin v. Light Co., 100 Ky. 173, 37 S. W. 851, 34 L. R. A. 812; Schweitzer's Adm'r v. Electric Co. (Ky.) 52 S. W. 830; Thomas' Adm'r v. Gas Co., 112 Ky. 569, 66 S. W. 398; Macon v. Railway Co., 110 Ky. 680, 62 S. W. 496.

After referring to a similar case in the Supreme Court of North Carolina, where a similar conclusion was reached, the court proceeded:

"The boy Fain was, when killed, traveling on the sidewalk, where he had a right to be. The deadly wire was in easy reach. He, boylike, inadvertently or purposely touched or took hold of it, without knowing of the danger of so doing, as there was nothing in its appearance to give him warning of the presence of the mysterious and deadly current with which it was charged. Under such circumstances, it may be doubted whether there was any proof of contributory negligence to go to the jury; but the question of whether he was guilty of negligence in thus taking hold of the wire was properly submitted to the jury by the instructions of the lower court, and we think the conclusion of the jury that he was not guilty of such negligence is fully sustained by the evidence."

In the present case it appears, as has been said, the plaintiff was a common laborer, knowing nothing of electrical work, and unfamiliar with the perils attending it. In sending him upon the roof to work the defendant was bound to know that he might come in contact with its wire. Newark Electric Light & Power Co. v. Garden, 78 Fed. 74, 23 C. C. A. 649, 37 L. R. A. 729. And it was bound by the plainest principles of law and justice to properly insulate its wire, to the end that those likely to come in contact with it should not be injured. Authorities, supra. See, also, Bourke v. Butte Electric Light & Power Co., 33 Mont. 267, 83 Pac. 470; Griffin v. United Electric Light Co., 164 Mass. 492, 41 N. E. 675, 32 L. R. A. 400, 49 Am. St. Rep. 477; Western Union Telegraph Co. v. McMullen, 58 N. J. Law, 155, 33 Atl. 384, 32 L. R. A. 352. There is nothing in the suggestion that the defendant's negligence was not the proximate cause of the plaintiff's injury. The proximate cause, as said by the Supreme Court in Insurance Company v. Boone, 95 U. S. 130, 24 L. Ed. 395, is the efficient cause.

We see no error prejudicial to the defendant in the allowance by the trial court of testimony of expert electricians as to the condition of the wire and premises at the time of and shortly after the accident, and as to the method adopted by the company for the insulation of the wire. It is contended on behalf of the defendant that all of the electricians who were introduced in the case testified that the form of insulation adopted by the defendant was the best form of insulation in commercial use at the time. A reference to the record is far from bearing out counsel's statement in that regard. For instance, the witness A. D. Aiken testified, among other things, as follows:

"I was working for the Colusa Parrot Mining & Smelting Company at its reduction works on the 12th of July, 1904. I remember the incident of Mr. Monahan being hurt on that day. I was doing electrical work. I am an electrician by occupation. I have followed that occupation about 12 years. This is a correct model of the situation there at the time Monahan was hurt.

That point where the rag string is tied is about the place he got burned, I believe. As to the current that wire was carrying when Monahan was hurt, I believe it was about 2,500 volts, something along there—2,500 or 2,700. I do not know the amperage. I could not say anything about that of my own knowledge. The current was made down in the engine room. The current came in over these wires, over a pole, which you have marked 'X,' and this was the Missouri River Power Company's line. The engine room is down in here [indicating], right about in there where it is marked 'Y' with the chalk; right about in there. The current which was going over the point of the rag string was feeding motors on each end; and, after it left the motor, it came out back that way [indicating] to where it started from. It was measured before it reached the point of the rag string. The meter was in the engine room at the point 'Y'; approximately so, yes. The meter belonged to the Missouri River Power Company, I believe. That meter was used for measuring the quantity of current that they used at their works. The Colusa Parrot Mining & Smelting Company used it. As to how high the point of the rag string was above the roof on the day of the injury, I would say about four feet and a half, something like that, I should judge. Yes; I saw Monahan there while he was hurt. I tried to bring him to; worked on him about 20 minutes. We got him to at last. He was away from the wire when I got there. I heard the current was shut off when it was ascertained that Monahan was on the wire. I don't know, but I am sure it was shut off from the fact—I didn't see that it was shut off, but Mr. Bartzen telephoned for them to shut it down at the plant at the substation down there. I don't know whether it was a dead wire after that. I didn't test it to see. This roof was made out of corrugated iron. The conductivity of corrugated iron for electricity is very good The insulation at the rag string was weatherproof. Well, rubber-covered insulation is supposed to be the best—the best they can get. That has been in use in Butte ever since I can remember. They don't use it on the outside very much—only sometimes they do."

And thereupon the witness was asked the following questions:

"Q. What have you to say as to the safety of a human being coming in contact with this wire, even if the insulation was in perfect condition, with the current which that wire was carrying, and standing on that corrugated roof?

"Mr. Shelton: This is objected to as incompetent, irrelevant, and immaterial.

"The Court: I think that is competent—his opinion.

"A. Well, I would not like to take chances myself, even if it was rubber covered.

"Q. You would not, even if it was rubber covered?

"A. I would not consider it safe.

"Q. And, supposing it were not rubber covered, but covered with the insulation which it had on it, and suppose that insulation were new and in good condition?

"Mr. Shelton: That is objected to as incompetent, irrelevant, and immaterial. (Objection overruled. Defendant excepts.)

"A. Well, I would not consider that safe, either.

"The Witness: I was at this point [indicating] some time just before the trial of this case last April, or at the last trial I believe I was. I think it was practically in the same condition, then, compared to its condition on the day that Monahan was hurt. I think it was practically the same, as near as I can remember."

There could have been no better evidence of the improper insulation of the wire in question than the shock the plaintiff received from touching it. At points or places where people have the right to go for work, business, or pleasure the insulation and protection should be made as nearly perfect as reasonably possible, and the utmost care used to keep them so. Authorities, supra. See, also, Haynes v. Raleigh Gas Co., 114 N. C. 203, 19 S. E. 344, 26 L. R. A. 810, 41 Am.

St. Rep. 786; Atlanta Con. St. R. Co. v. Owings, 97 Ga. 663, 25 S. E. 377, 33 L. R. A. 798; Thompson's Commentaries on the Law of Negligence, § 800.

It was not error to admit evidence, upon the question of damages, as to the plaintiff's expectancy of life according to the life tables, and in respect to the amount required to produce him an annuity for such life term equal to the difference between the amount which he would have earned each year if he had not been injured, and that which he could earn in his injured condition. Baltimore & Ohio Co. v. Henthorne, 73 Fed. 634–641, 19 C. C. A. 623; Bourke v. Butte Electric L. & P. Co., 33 Mont. 267, 83 Pac. 470; 4 Sutherland on Damages (3d Ed.) § 1249.

We think no other point needs special mention. The judgment is affirmed.