Nicolás Orta, Plaintiff and Appellee, *v.* Porto Rico Railway, Light & Power Co., Defendant and Appellant.

No. 3640.  Argued March 9, 1926.—Decided May 16, 1927.

*J. H. Brown* and *Clemente Ruiz Nazario* for the appellant.  *Rafael Arce Rollet* and *Manuel Tous Soto* for the appellee.

Mr. Justice Wolf delivered the opinion of the court.

This was an action for damages. The appellant, the Porto Rico Railway, Light & Power Company, was charged with negligence causing the death of Fernando Orta Jurado,

the son of the plaintiff. The gravamen of the charge of negligence was that the said company had a public service of electric wires in Caguas which bore a current of high tension, namely, some 4,400 volts; that these wires were not properly insulated or otherwise protected from falling; that while the said boy, who was about 13 years old, was going through the streets of Caguas one of the wires broke, fell on the street and encircled the child, causing an intense shock to the body of the said child and ultimately throwing him against the wall of a house, fracturing his skull and in this manner causing the immediate death of the said child.

The District Court of San Juan found that there was no evidence that the child had fallen from a roof, as was alleged in the answer of the defendant; that the death of Fernando Orta could not be explained in any other way than by reason of the electric shock received by his body from the electric current borne by the wires which fell on the street at the moment at which he was passing, which said wires at the same time threw him down or made him fall on the ground, causing the fracture of the base of the skull, which also could have been the cause of his death.

The appellant attempts to show that there was a variance between the complaint and the evidence, and that the judgment did not follow either the complaint or the said evidence. The appellant relies on the well accepted theory that if a plaintiff alleges one ground of negligence he is bound by that averment and can not recover on some other ground or on some general ground of negligence, when his complaint shows that he is relying on a specific ground. The appellant is at pains to point out to us that some of the witnesses called as experts ventured the theory that the electric wires had caused the body of the boy to rise some 30 or 40 feet in the air and that he consequently fell and fractured his skull.

It may be conceded that the autopsy in connection with the testimony of some of the experts did tend to show that the death of this boy was not caused instantly by the shock,

but that his death was caused by his head striking some very, hard object, whatever that object may have been. There was testimony to the effect that the current of 4,400 volts, if it had directly struck the body of the boy, would have produced his death instantly. Nevertheless there was evidence that he lived and breathed for a little while after the accident, and the evidence also tended to show that even a high tension current does not always produce instant death. We do not find that the possibility that the death of this boy would have resulted from the electric current itself was excluded. We need not spend a great amount of time in considering whether the death was directly caused by the electricity or not, because we think that the exact manner in which the death was caused was not highly important in this case.

The appellant insists that there was no evidence to sustain the finding that the boy fell against the side of a house, as stated in the complaint, or that his head fell upon the ground, or any other particular evidence to show the manner in which the death of the boy was caused. This is not a case where the complainant set up one set of essential facts in his complaint and relied on others at the trial. The fact was, as established by all the evidence in the case, direct and circumstantial that the death of the boy was caused by the fall of the electric wire. It was relatively unimportant, therefore, whether his death was caused by the electricity directly or that by some reason, not clearly explained, he was thrown against some hard object. The efficient and proximate cause of this accident was the fall of the electric wires, striking this boy. What happened after the fall of the wires may be left entirely to speculation without destroying the essential fact to which we have referred. It makes no difference that the complaint set up that the boy fell against the wall and did not prove the same. This, we hold, was an unessential variance. The court, be it noted, did not base its finding on the fact that the boy fell against the wall,

but said generally all that need be said, that the death could have been produced by the boy's head striking a hard object as a result of the fall of the electric wire.

The court also held that it was negligence on the part of a company to maintain wires of high tension in populous places without due protection and vigilance and that this failure to provide was the proximate cause of the damages suffered by the plaintiff. The appellant maintains that the actual negligence of the defendant company was not shown and that the court was implicitly relying on the doctrine of *res ipsa loquitur*. However, with the exception of cases from Pennsylvania which the appellant cites, the prevailing rule in the United States is that where a wire of high tension falls in a public street, causing injury, the doctrine of *res ipsa loquitur* is applicable.

Under the title of Electricity in 20 C.J., p. 380, par. 63, we find the following:

"(2) Res Ipsa Loquitur. The doctrine of res ipsa loquitur finds frequent application in electrical cases where the circumstances of the accident are often such as to create a presumption or inference of negligence sufficient to carry the burden resting primarily upon plaintiff and often said to cast on defendant the burden of meeting or overcoming it by evidence, but accurately speaking, it does not operate to shift the burden of proof. The fact that the defendant conducts electricity to a certain place; that electricity so employed may escape in such a way as to produce an injury; and that an injury from electricity is actually occasioned in a place where the injured party has a right to be are usually held to constitute a prima facie case of negligence. The fact that wires carrying a dangerous current of electricity have broken or become detached from their poles in the street or highway and caused injury is generally held to raise a presumption of negligence, although there is authority to the effect that the doctrine does not apply in such cases."

The text is supported by *Rosado v. Ponce Railway, Light & Power Co.*, 18 P.R.R. 593; *Edmanson v. Wilmington & Philadelphia Traction Co.*, 120 Atl. 923; *Appalachian Power Co. v. Hale*, 113 S.E. 711; *Colusa Parrot Mining & Smelting*

*Co.* v. *Monahan,* 162 Fed. 276; *Neary* v. *Georgia Service Co.,* 27 Ga. App. 238, 107 S.E. 893; *Von Treba* v. *Laclede Gas Light Co.,* 209 Mo. 648, 108 S.W. 559; *O'Leary* v. *Glens Falls Gas & Electric Light Co.,* 107 App. Div. 505; *Wolpers* v. *New York & Queens Electric Light & Power Co.,* 91 App. Div. 424; *Smith* v. *Brooklyn Heights Railroad Co.,* 82 App. Div. 531; *Diller* v. *Northern California Power Co.,* 162 Cal. 531; *Herbert* v. *Lake Charles Ice & Water Works Co.,* 111 La. 522; *San Juan Light & Transit Co.* v. *Requeña,* 224 U.S. 89.

While in the case of *Rosado* v. *Ponce Railway, Light & Power Co., supra,* we did not discuss the jurisprudence in an ample manner, it is an authority in Porto Rico for the application of the doctrine. The facts of that case were altogether similar to the facts in this one.

The appellant also maintains that the defendant company did everything necessary to protect the public from the fall of dangerous wires. The evidence, as we have indicated, shows that these wires were not duly insulated. The appellant apparently relies on some of the statements of experts that these wires generally are protected in no different manner from that in which the appellant here sought to protect the public, or insulate its wires. The whole tendency of the authorities is to the contrary.

*Herbert* v. *Lake Charles Ice and Water Works Co., supra; Colusa Parrot Mining & Smelting Co.* v. *Monahan, supra;* 9 Ruling Case Law, 1210, 1211, where it is said: ''From the very nature of this business an electric company using highly charged wires owes a legal duty, irrespective of any contractual relation, toward every person who in the exercise of a lawful occupation in a place where he has a legal right to be is liable to come in contact with the wires, to see that such wires are properly placed with reference to the safety of such persons and are properly insulated; *Lewis's Executors, Appellants,* v. *Bowling Green Gas Light Co.,* 22 L.R.A. (N.S.) 1169, and elaborate note; *Braun* v.

*Buffalo General Electric Co.*, 200 N.Y. 484, 94 N.E. 206, 34 L.R.A. (N.S.) 1089, and note, and also some of the other cases previously cited in this opinion.

We do not find that the appellant sufficiently met the duty of explaining how these wires fell, or of relieving itself from the legal presumption established by the doctrine aforesaid. The appellant also alleged error in fixing the damages at $3,000.

The complainant sought damages and injuries in the sum of $10,000. The defendant and appellant relies on the case of *González* v. *San Juan Light & Transit Co.*, 17 P.R.R. 115, which held that "only such damages as have been really and actually caused can be recovered in these cases, and, therefore, to enable the court to decide as to the damages sustained by the plaintiff it is necessary to show that they actually exist and to substantiate the facts which are to serve as basis for determining the amount of the indemnity."

The defendant maintains that in this case there was only evidence of a very small earning capacity on the part of the deceased and that, therefore, an award of $3,000 was highly excessive. The District Court of San Juan in its opinion did not attempt to express its reasons for awarding the sum of $3,000 other than by saying that the sum of $3,000 was a sufficient indemnization.

*González* v. *San Juan Light & Transit Co.*, *supra*, fixed the primary source of an action of damages in section 1803 of the Civil Code, as follows:

"A person who by an act or omission causes damage to another, when there is fault or negligence, shall be obliged to repair the damage so done."

And then the court said as follows:

"So that the claim of the plaintiff herein is sustained by this precept of the law which establishes her right to be indemnified by the defendant for the damage caused her on account of the death of her son, if said death was brought about by any act or omission of said company, through its fault or negligence.

"This is our substantive law in the matter of damages and it is in accordance with its provisions, as interpreted by the ruling jurisprudence, that courts should decide questions submitted to them for decision, and therefore the plaintiff is entitled, in cases where there may exist fault or negligence on the part of the defendant company, to recover from the defendant company the damages that may have been actually caused to her, whatever they may be."

In *Arreche et al.* v. *The Porto Rico Railway, Light & Power Co.*, 31 P.R.R. 424, we again showed that section 1803 of the Civil Code is the primary source from which a complainant may hold a defendant responsible for the death of another. Then we cited sections 60 and 61 of the Code of Civil Procedure as being the ultimate expression of the Legislature in regard to actions for the death; specifically, however, in the case of *Arreche* we were only considering who had a right to bring the action. We cited 17 C.J. 1262, to the point that sections 60 and 61 were necessarily the ultimate expression of who the persons were who had a right to bring an action for the death of another.

In *Maldonado* v. *Porto Rico Drug Co.*, 31 P.R.R. 709, this court awarded damages to include the element of mental suffering caused to the parent of the child who was killed. Some doubt has been thrown upon our decision in this case by reason of various decisions of the Supreme Court of the United States and of the decision of the Circuit Court of Appeals for the First Circuit in the case of *American R.R. Co. of P.R.* v. *Santiago*, 9 Fed. (2nd) 753.

Lord Mansfield long ago said that when the interpretation of statutes had been thrown into doubt by the decisions of the courts it was well to re-examine the statutes, which we are now attempting to do. The decisions of the Supreme Court of the United States, to which reference has been made, are principally an interpretation of the Federal Employer's Liability Act. This in its essential terms is supposed to follow the famous Lord Campbell's Act. The necessity for this act grew out of the fact that by the common

law of England no damages were recoverable by reason of the death of a person. All the courts in the United States, with perhaps few exceptions, held that the new statutes were the sole source of the law and that they alone could be considered for the purpose of determining the rights of action or the damages that ensue from the unlawful killing of a person. In Porto Rico, however, the right of action does not originate by virtue of sections 60 and 61 of the Code of Civil Procedure, but by virtue of section 1803 of the Civil Code, copied from section 1902 of the Spanish Civil Code.

An excellent review of the whole subject-matter is to be found in the case of *Manzanares* v. *Moreta,* 38 Philippine Rep. 821. The syllabus shows that the court relied on section 1902 of the Philippine Civil Code (equivalent to our 1803) to fix the damages sustained by a mother for the loss of a child and who had been deprived of the aid and assistance which it was presumed she was entitled to in her old age if the said child had lived to be a man. The opinion is very short and does not analyze the authorities, but Malcolm, Justice, supported by Fisher, thought it advisable to extend the reasoning in a concurrent opinion. Incidentally, he showed that there had been no special proof of the amount of damages suffered. Then he went on to say that there was no recovery at common law for the death of a person, and that by the civil law as existing in Spain, France, Porto Rico and Louisiana the true principle was somewhat beclouded. Louisiana, he thought, was originally against the recovery without the statute, but we find subsequently, probably by a reform in the law, at least one decision of Louisiana seems to be to the contrary. It is *Bourg* v. *Brownell-Drews Lumber Co.,* 120 La. 1010. The court relies on section 2315 of the Civil Code, which is the equivalent of our section 1803.

Mr. Justice Malcolm showed that the rule was otherwise in Spain and France and quoted the authorities, all to the effect that damages were recovered by reason of the death

of a person. Ancient authorities like Grotius, Puffendorf and Domat were cited. Grotius was specially mentioned to show that damages were recoverable by reason of death and that the damages included the hope of maintenance.

On page 829 Mr. Justice Malcolm said:

"Both because of the civil origin of the applicable law in the Philippines, because we are not fettered by the harsh common law rule on the subject, because it is the modern and more equitable principle, and because reason and natural justice are eloquent advocates, we hold that an action for damages can be maintained in this jurisdiction for the death of a person by wrongful act. It can be admitted, since objection has not been made, that the primary right of action is in the parent."

In the Philippines it is evident there are no provisions of law similar to sections 60 and 61 of our Code of Civil Procedure.

Judge Malcolm said that those seeking to recover damages must ordinarily establish their pecuniary loss by satisfactory proof, but that in certain cases the law presumed a loss because of the impossibility of the exact proof and computation in respect to the amount of the loss sustained. In other words, that the loss could be proved either by evidence or by presumption; and that, for instance, where the relation of husband and wife or parent and child existed, provided the child was shown to be a minor, the law presumed a pecuniary loss to the survivor from the fact of death and it was not necessary to submit proof as to such loss, and the Judge quoted cases from Illinois, Pennsylvania, Washington, South Carolina, and also the case of *Díaz* v. *San Juan Light & Transit Co.*, 17 P.R.R. 64. The last-named case, quoting from the opinion of Judge Toro, was cited to show that it was not necessary for the complainant to prove his loss in terms of dollars and cents, but it was sufficient to show that the complainant had suffered a real damage, etc. *González* v. *San Juan Light & Transit Co.*, 17 P.R.R. 115, was also cited, possibly to show the application of the section similar

·to section 1803, and also to show the state of the general jurisprudence.

Then Mr. Justice Malcolm practically closes his opinion in the following language:

"To force the plaintiff to prove her loss exactly would be to ask the impossible—would be in effect to return to the old common law rule which prohibits a recovery. Physical and gross criteria, as the hewing of wood and carrying of water, are indeed no standards at all. Even if the case was to be reopened, the plaintiff could with extreme difficulty present any better evidence than that now before us. As we have the basis of satisfactory facts from which to infer the amount of damage, as the law presumes a pecuniary loss because of the death, and as the trial judge has made an intelligent computation, we should rest here, with knowledge that, within the ken of human wisdom, justice has been done."

In two cases in the United States District Court for Porto Rico, namely, *Torres* v. *Ponce Railway, etc., Co.*, 1 P. R. Fed. 476, and *Borrero* v. *Compañía, etc.*, 1 P. R. Fed. 144, it was held that an action for wrongful death existed without statute under the law from Spain. Reference is made to these cases in 17 C. J. 1184, note 20.

It is evident, then, that in Porto Rico the right of action did not and does not depend exclusively upon sections 60 and 61 of the Code of Civil Procedure. The cause of action was not created for the first time by these sections. Given the previous state of the law in Porto Rico, let us examine these sections to see what they really do. It will immediately be noticed that these two sections are placed under the title in the Code of Civil Procedure which relates to the parties to actions. They determine the persons who may establish an action for wrongful death. They may perhaps give causes of action to persons who previously did not have them and prevent others from exercising similar actions. We find nothing in these sections to show that the Legislature thought that it was creating an action for the first time. On the contrary, the Legislature must have known of the existence

of section 1803 of the Civil Code, and did not seek to repeal or impair it.

Unquestionably the origin in the United States of all actions for wrongful death is Lord Campbell's Act, and necessarily that act received a definite construction in England and was followed in the United States. However, we find in the adoption of sections 60 and 61 no intention on the part of the Legislature to adopt all the construction that has been put upon the said acts by the courts of the different jurisdictions of the United States.

Some of the later acts, and notably the Federal Employer's Liability Act, made depedency a test, establishing some difference between, close next of kin and those who are a little more removed. Some of the statutes in the United States specifically use the words "pecuniary loss." In a number of the States, nevertheless, each court has interpreted the survivorship act in the light of its previous practice and jurisprudence. There is nothing in section 60 or 61 which shows any intention to depart from the rights of action previously existing or shows an intention on the part of our Legislature to adopt the statute with the construction put upon it in some other State.

Under these circumstances we feel free to maintain the jurisprudence already established by this court in the case of *Maldonado* v. *P. R. Drug Co., supra*. It is true that in that case we mentioned a California case and California has since adopted a different rule; nevertheless, Louisiana in numerous cases has awarded mental suffering as an element of damage and the courts of that State are disposed to consider mental suffering as an actual and pecuniary loss.

Among others: *Johnson* v. *Industrial Lumber Co.*, 131 La. 898; *Thompson* v. *New Orleans Railway & Light Co.*, 148 La. 698; *Bourg* v. *Brownell-Drews Lumber Co.*, 120 La. 110; *Fuchs* v. *Kansas City Southern Railway Co.*, 132 La. 782, 794; *Underwood* v. *Gulf Refining Co.*, 128 La. 968; *Wooten* v. *United Irr. & Rice Mill Co.*, 128 La. 1009, where

the court intimated that damages for mental suffering might be allowed, but that the doctrine should be applied with great circumspection.

Mr. Justice Rodey in *Periañes* v. *Valdés*, 4 P. R. Fed. 126, held that "under the law of this Island a parent has the right to recover for the loss of a child in this way, and also because of the lack of support to plaintiff which follows the death of the child, and because of the loss of his care of his parent, and her mental anguish as a result of the loss."

Our attention has been drawn to the case of *Michigan Central R. R. Co.* v. *Vreeland*, 227 U. S. 59, which is probably the leading case on the determination of damages to be awarded in the case of wrongful death, especially under the Employer's Liability Act. The court accepts and assumes that the Employer's Liability Act follows Lord Campbell's Act, but the former in many ways is more specific. The *Vreeland Case* can not be examined without arriving at the conclusion that the Supreme Court of the United States was considering only a cause of action which was first created by a new statute and not the situation where a right of action for wrongful death had always existed. The court said: "The obvious purpose of Congress was to save a right of action to certain relatives dependent upon an employee wrongfully injured for the loss and damage resulting to them financially by reason of the wrongful death." We are quite agreed that if the *Vreeland Case* was to be followed mental suffering could not be an element of damage.

Even, however, if we felt bound to follow the *Vreeland Case* in Porto Rico as controlling the interpretation of our local statutes, nevertheless we find nothing in that case which requires a father or a mother to show minutely the material damage suffered in the loss of a child. We find nothing in the case that says so. Specifically the *Vreeland Case* in the lower court was reversed for an instruction that allowed the jury to speculate on some damages which the court thought in no case could be considered pecuniary.

A number of courts in interpreting the Federal Employer's Liability Act have not felt that the *Vreeland* Case stood in the way of giving parents fair damages without a strong showing in cases where a child had been wrongfully killed.

*Lundeen* v. *Great Northern Railway Co.*, 128 Minn. 336, 150 N. W. 1088, held that a jury might base an estimate of damages on decedent's age, health, habits, earning capacity, disposition to aid the beneficiary, the age and circumstances of the father and the aid actually rendered during the decedent's lifetime. The court sustained an award of damages in this case and pointed out that *Michigan Central Railway Co.* v. *Vreeland* was not in point, inasmuch as that case was reversed because of an instruction upon the measure of damages, permitting the jury to include those matters not susceptible of money valuation, such as the loss to the wife of the companionship and advice of her husband. The evidence of actual pecuniary assistance in the *Lundeen* Case to the parents of an adult son was meager, yet a verdict of $2,000 was sustained. The court reviewed numerous cases where the evidence of aid to the parents or of earning capacity was not greater, or much greater, than in the instant case.

*Davis et al.* v. *Cincinnati, etc.*, 188 S. W. 1061, also followed the *Vreeland* Case and held that as a matter of law a child had a right to expect pecuniary assistance from its father during the time of its minority. The court excluded such elements as care, counsel, training and education that a child might receive from its father and limited the recovery to the actual pecuniary loss.

*Berg* v. *Atlantic Coast Line Railway Co.*, 93 S. E. 390, citing the *Vreeland* and other cases of the United States Supreme Court, showed that in certain relations, namely, a parent or child, dependency was to be presumed under the Federal Act, Held: That it was not necessary to allege or prove dependency.

*Fogarty* v. *Northern Pac. Railway Co.* (Wash.) L.R.A. 1916 C, 803, points out that the *Vreeland Case* did not eliminate the legal liability as a factor. "The whole argument," remarked the court, "is directed to an elimination of recovery by the surviving spouse for 'loss and companionship, etc.,' because these things are not capable of measurement by any material standard." Abandonment by the parent shown in that case was only in mitigation of damages.

*Tobin* v. *Bruce* (S. D.), 162 N. W. 933, citing the *Vreeland Case* and numerous others, pointed out that the Federal Act did not require the showing of dependency when parents or children claimed as such. It was only when the other next of kin brought an action that dependency had to be shown.

Besides the foregoing cases, and those summed up in the opinion of Mr. Justice Malcolm, Oregon, South Carolina, Virginia and Nevada all show or seem to show that where a parent or child is concerned, although limiting the recovery to small amounts, there is a presumptive right to recover without a strong material showing. In many of the courts the whole matter is left to the jury and a verdict of $2,000, $3,000 or $4,000 is generally not disturbed.

The principle is summed up in 17 C. J., 1352, as follows: Where the relation of husband and wife or parent and minor child exists the law generally presumes a pecuniary loss to the survivor from the fact of death, so that proof thereof is not required.

Section 61 ends with this language: "In every action under this and the preceding section such damages may be given as under all the circumstances be just." Reading this language, we find no intention on the part of the Legislature to put a minute limit on the recovery to a parent when a child is killed. On the contrary, we think the Legislature was giving the courts a wide discretion. Necessarily when a very young child dies the damages to the parents are largely a matter of speculation. In Porto Rico, as in some of the States, a parent has a right to expect support from his child,

not only while the child is a minor but during his whole lifetime, provided the parent has some need therefor. This expectancy is incapable of being measured exactly and damages which do not exceed a reasonable amount in case of the loss of a child surely should be sustained.

*González* v. *San Juan Light & Transit Co., supra,* was with respect to damages necessarily overruled by the *Maldonado Case.* However, even if it had not been, so far as it is inconsistent with the principles here laid down it should be considered as overruled.

*American R. R. Co. of P. R.* v. *Santiago,* 9 Fed. (2nd) 753, should not militate against the considerations at which we have arrived. The Circuit Court of Appeals was not considering the whole state of the law in Porto Rico. We have the idea, until determined otherwise by the superior courts, and especially following the case of *González* v. *Díaz,* 261 U. S. 102, 106, that it is the Supreme Court of Porto Rico that primarily must determine the damages that may accrue to a father from the wrongful death of a son. To be sure, if the Circuit Court of Appeals had been fully considering our statutes and jurisprudence, the opinion of that court would have been persuasive to the point that we probably should have considered it binding, although perhaps not technically so. In other words, we have the idea that a case appealed from the United States District Court for Porto Rico about a matter on which the local courts have not passed specifically can not be considered as binding until it is shown that the Federal Circuit Court of Appeals has considered the whole proposition. Courts on the continent of the United States, including the Circuit Court of Appeals, consider that sections 60 and 61, or equivalent sections, establish for the first time a cause of action for wrongful death, which was not true either in Spain, in the Philippine Islands or in Porto Rico.

The judgment appealed from should be affirmed.